# Birmingham Min. & Cont. Co. v. Skelton

*Damages for Personal Injury to Employe.*

(Decided Feb. 14th, 1907. 43 So. Rep. 110.)

1. *Master and Servant; Operation of Mine; Injury to Employe; Evidence.*—Evidence in this case examined and stated, and held sufficient to require a submission of the questions to the jury as to whether defendant was negligent, and as to assumption of risk and contributory negligence on part of plaintiff.
2. *Same.*—One working a mine, whether a servant of the corporation, or working there by invitation, assumes the risk incident to the work, but increased risks caused from negligence of the mine operator are not incident to the business.
3. *Same; Instruction.*—A charge asserting that if plaintiff was hurt while fixing to set a temporary prop to support the roof,

which fell on plaintiff, and plaintiff knew it was for such purpose, there must be a finding for defendant, pretermitting all negligence on part of defendant and hypothesizing none on part of plaintiff, was erroneous and properly refused.

APPEAL from Birmingham City Court.

Heard before Hon. CHAS. A. SENN.

Action by Oscar Skelton against the Birmingham Mining & Contracting Company. Judgment for plaintiff, defendant appeals. Affirmed.

The nature and character of the action, together with the facts relied upon to support the same, and to support the defense of contributory negligence and assumption of risk, fully appear in the opinion. Charges 2 and 3, referred to in the opinion, were the affirmative charges as to counts 1 and 2 of the complaint, respectively. Charge 6 is as follows: "I charge you that if you believe from the evidence that at the time plaintiff was hurt that he was fixing to set a temporary prop, and that such a prop was to support the roof, which fell on plaintiff, and that plaintiff knew that it was for such purpose, that you must find for defendant." There was verdict and judgment for plaintiff for $750.

PERCY & BENNERS, for appellant.—The danger of the roof, which was composed of dirt, falling, was obvious, and the risk arising from this danger was assumed by the plaintiff.—*Brown v. Electric Railway Co.*, 70 Am. State Repts. 666; *Mielke v. Chgo. & Northwestern Ry. Co.*, 74 Am. State Repts. 834; *Olson v. Maple Grove Coal Co.*, 87 N. W. 736; *Vincennes Water Supply Co. v. White*, 24 N. E. 747. Plaintiff assumed the risk in this case and cannot recover.—*Sloss Iron & Steel Co. v. Knowles*, 129 Ala. 410; *Pioneer Mining & Mfg. Co. v. Thomas*, 133 Ala. 279. The doctrine that the master must furnish a safe place to work has no application to a case where the place becomes unsafe during the progress of the work. As to such danger the law only requires reasonable care to employ competent men and provide suitable material.—*Petaja v. Mining Co.*, 32 L. R. A. 435; *Consolidated Coal Co. v. Floyd*, 25 L. R. A. 856. Knowledge of defect on the part of the employer

[Birmingham Min. & Cont. Co. v. Skelton.]

does not constitute negligence unless there has been a reasonable time to remedy it.—*Seaboard Mfg. Co. v. Woodson,* 94 Ala. top of page 147; *Clements v. A. G. S. R. R. Co.,* 127 Ala. 166. Plaintiff cannot say that on account of inexperience in the work in which he was engaged he did not assume the risk arising from its obvious dangers.—*Worthington v. Goforth,* 124 Ala. 656; *Northern Ala. R. R. Co. v. Beecham,* 140 Ala. 422.

BOWMAN, HARSH & BEDDOW, for appelle.—So far as is shown by the bill of exceptions the court is not requested to give the charges in writing to the jury; and in any event the charges were not separately asked, and if one charge is bad all are bad.—*Pearson v. Adams,* 129 Ala. 157; *Millikan v. Maund,* 110 Ala. 232. No exceptions were reserved at the time of the refusal of the court to give the charges.—*Reynolds v. The State,* 68 Ala. 503; *Tannile v. Walsh,* 81 Ala. 160. If the evidence is conflicting in a case where the complaint charges in different counts that plaintiff was an employe and that he was not an employe, neither of the counts can be taken from the jury so far as that question is concerned. —*Sloss I. & S. Co. v. Tillson,* 141 Ala. 152. Plaintiff had a right to trust in Brown's superior judgment.—*Southern Ry. Co. v. Guyton,* 122 Ala. 231. The 6th charge was properly refused.—*Ala. S. & W. Co. v. Wrenn,* 136 Ala. 493; *Southern Ry. Co. v. Guyton,* 122 Ala. 231.

DENSON, J.—This action sounds in damages for personal injuries suffered by the plaintiff as a consequence of alleged negligence on the part of the defendant or its servants. The complaint is composed of four counts. It is alleged in the first and second counts that a part of the roof of a mine which was being operated by the defendant fell upon or against the plaintiff and broke his leg, while he was in said mine by invitation of the defendant, but not as servant or employe of the defendant. The first count ascribes the falling of the roof and consequent injury to a defect in the condition of the ways, works, machinery, or plant of the defendant, in that part of the roof or top was not sufficiently secure, or was otherwise in danger of falling. In the second

count the falling of the roof and injury are laid to the negligence of F. H. Brown, the defendant's superintendent. The third and fourth counts each allege that the plaintiff was working in the mine as an employe of the defendant, and the allegations of negligence in those counts correspond to those of the first and second counts, respectively. The only errors assigned on this appeal relate to charges refused by the court to the defendant (appellant). The first in the series of charges refused is the general affirmative charge, and it applies to the whole case.

The first question presented by this charge for determination here is whether the evidence was such as to require the trial court to withdraw from the jury the consideration and determination of the question of negligence on the part of the defendant or its servant. The evidence may be summarized as follows: The defendant was operating what are known as "Juanita Mines," in Jefferson county, and the plaintiff was, when injured, mining ore in said mines, either as an employe of the defendant, or by invitation of the defendant, and for its benefit. F. H. Brown was defendant's superintendent or "mine boss," in charge and control of the mining operations; and the plaintiff testified that he was working under Brown's orders and that Brown was there at the mines every day from 6:30 o'clock in the morning until 5 o'clock in the afternoon. Plaintiff's leg was broken by the falling of the roof of an entry of the mine in which he was at work. He and his assistant, or "buddy," Nix, opened the entry four days before the accident occurred. Plaintiff had worked in the entry every day since it was started, and the work was at the time of the accident still being done by daylight. They would drive the entry about three feet ahead, when Brown, the "mine boss," would go in and set timbers to support the roof permanently. The arrangement of the timbers may be aptly described by comparing it to a table. The square sets of timbers referred to by the witness correspond to the legs of a table, across the top of which was stretched a straight piece of timber called a "collar." The square sets of timbers were placed about three feet apart, and across the top

of them, running with the entry and stretched from one collar to the next collar, were laid timbers called "laggings," about five feet long, which were placed for the purpose of holding the roof or top of the mine. There is evidence which tends to show that the roof was, in the language of one of the witnesses, "loose dirt," and in that of another, "red clay." The evidence showed that it was the duty of the defendant to set the timbers, and that Brown, the "mine boss," set those that were put up. The evidence on the part of the plaintiff tended to show that the laggings which were put in the entry were placed too wide apart and could not hold a roof of the kind in question, and that when a place is not held up immediately after it is mined out, or as soon as there is room to get the timbers in, it is then almost impossible to hold it with timbers after it takes weight; but, when the timbering is done properly, it holds the roof. There is also a tendency in the evidence to show that the laggings were not placed so as to be solid, and that to support a roof of that kind the lagging should have been solid. The proof further tended to show that there could not be a square set of timbers with every stroke of the pick; that the mining must proceed three feet beyond where the permanent timbers stop before other permanent timbers are put in; that "the way to hold the roof beyond where the permanent timbers stop, until you get ready to put in permanent timbers, is to put in a temporary prop"; that, when the permanent timbers are put in, the lagging extends a short distance beyond, and, with the lagging put in "good and tight," it will hold the roof for a short distance, or long enough to put in temporary timbers, if the laggings are put in properly. The evidence further tended to show that the plaintiff's "buddy," Nix, had been injured, and had not worked with him for two days at the time of plaintiff's injury; that a negro was working in Nix's stead; that they had driven the entry about twelve feet deep, and four or five feet beyond the last set of permanent timbers; that Brown went into the mine where plaintiff was just before the accident, looked at the roof and sounded it with his hand, and said to plaintiff it seemed sound and solid. Plaintiff told Brown he thought he

was ready for timbers. Brown told him he wanted him to put in a little shot in the corner, but not to fire it until he put in a "temporary," and for plaintiff to dig a "hitch" for the temporary, and he would go out, cut, and throw down the temporary timber. While plaintiff was cutting the "hitch," the roof fell and injured him.

Brown's evidence tended to show that the entry had not proceeded further than four feet beyond or ahead of the last set of permanent timbers, and that the place was not ready for another set of permanent timbers when plaintiff called for them; that the permanent timbers that had been set were properly set, and the falling of the roof was not due to any defect in the permanent timbers or the manner in which the lagging was done; and that no part of the roof over the permanent timbers fell. He further testified that there was nothing to indicate that the roof above plaintiff was likely to fall; that it seemed solid; that he went under it and sounded it, and it was solid; that he told plaintiff it was all right, but to put in the temporary prop before he shot. Notwithstanding the undisputed fact that no part of the roof over the permanent timbers fell, yet, in view of other tendencies of the evidence, we do not think that this should operate to take away from the jury the question whether or not the lagging was properly done. In other words, it was open for the jury to infer that the lagging was laid improperly, and not as a reasonably prudent man under like circumstances would have laid them, and that this improper lagging or setting of the permanent timbers contributed to the weakness of the roof that fell, and precipitated its fall. In this view we conclude that the question of the defendant's negligence vel non was one to be determined by the jury, which could not properly have been withdraw from their consideration.

The next question is whether the evidence is such as should have required the trial court to determine as matter of law that the plaintiff had such knowledge of the situation, and of the risks and dangers connected therewith, that, in continuing to work under the roof, he should have been held to have assumed the risks of the situation, or to have been guilty of contributory neg-

ligence. Indisputably the work in which the plaintiff was engaged at the time he was injured was attended with hazards and dangers. As was said in *Sloss Iron & Steel Co. v. Knowles*, 129 Ala. 410, 30 South. 584, the work was attended with risks and dangers that human foresight cannot always guard against; and the plaintiff, whether considered in the attitude of a servant or one working in the mine by invitation, must have been held to assume the risks incident to the work in which he was engaged. Thus the law is settled not only by our own, but also by the courts of last resort in other jurisdictions.—*Perry v. Marsh*, 25 Ala. 659; *Sloss Iron & Steel Co. v. Knowles*, 129 Ala. 410, 30 South. 584; *Linton Coal & Min. Co. v. Persons*, 15 Ind. App. 69, 43 N. E. 651; *Colorado Midland Ry. Co. v. O'Brien*, 16 Colo. 219, 27 Pac. 701; *Fitzgerald v. Connecticut River Paper Co.*, 155 Mass. 155, 157, 29 N. E. 464, 31 Am. St. Rep. 537; Dresser, Employer's Liability, p. 406, §§ 90, 103. But increased risks and dangers caused by negligence on the part of the employer are not deemed to be incident to the business, within the meaning of the general rule. "There is a duty resting upon the master which requires him to exercise due care on his part, to the end that the risks and hazards to those in his employ shall not be necessarily increased. When the master performs his duty in this particular, and exercises all the caution and foresight which ordinary care requires in view of the circumstances, then the risks and hazards pertaining to the business as thus carried on are assumed by the employes."—Dresser, Employer's Liability, p. 484, § 102. To bring the case at bar within this rule, it is necessary to assume that the defendant exercised due care in the manner in which the permanent timbering was done, and that the strength or stability of the roof that fell was not affected by defective timbering. We have in effect already ruled that the evidence was not such as to place these propositions beyond a reasonable adverse inference. Therefore it was properly a jury question whether the accident by which plaintiff was injured was caused by negligence on the part of the defendant, acting through its superintend-

ent or "mine boss," or whether it belonged to the risks incident to the employment.

The next question is, does the. evidence so clearly show that the plaintiff was guilty of contributory negligence in remaining at work under the roof as that the court should have determined the question as one of law without referring it to the jury? · The evidence without conflict showed that plaintiff had never mined any until he began to open the entry in which he was hurt, for four days before the accident; that he was "green" and inexperienced, and was an ordinary farm hand; and all of this was well known to the "mine boss," under whose orders he testified he was working. Brown was a miner, or "mine boss" of several years' experience. He went into the mine, and was told by the plaintiff a few minutes before the accident that he was ready for permanent timbers. Brown examined the roof, sounded it, and pronounced it solid, and told the plaintiff that it was all right, but he wanted him to put in a temporary prop before he shot, and for him to cut a "hitch" in the floor for the prop, while he (Brown) would go and cut the temporary timber and throw it down. Brown left the mine to get the timber, and in a few minutes, while plaintiff was cutting the "hitch," as he was directed, the roof fell on him. Brown further testified that there was nothing to indicate that the roof above plaintiff was likely to fall. Under this evidence, can it be said as matter of law that the plaintiff appreciated the danger of the roof falling, or that it was so glaring, so imminent, or manifest as to prevent a reasonably prudent man from risking it? Brown, who was an expert in such matters, after sounding it, did not appreciate the danger of the roof falling, and it does seem that it would be a stretch of the imagination to say, as matter of law, that the plaintiff did appreciate the danger, and, therefore, that he was guilty of contributory negligence in remaining under the roof to cut the "hitch," as Brown had directed him to do. In the case of *McKee v. Tourtellotte*, 167 Mass. 69, 44 N. E. 1071, 48 L. R. A. 542, the supreme court of Massachusetts, through Holmes, J., uses this language: "When we say that one appre-

[Birmingham Min. & Cont. Co. v. Skelton.]

ciates a danger, we mean that he forms a judgment as to the future, and that his judgment is right. But if against this judgment is set the judgment of a superior —one, too, from the nature of the callings of the two men, and of the superior's duty, seem to make the more accurate forecast—and if to this is added a command to go on with the work, and therefore to run the risk, it becomes a complex question of the particular circumstances whether the inferior is not justified, as a prudent man, in surrendering his own opinion and obeying the command. The nature and the degree of the danger, the extent of the plaintiff's appreciation of it, and the exigency of the work, all enter into consideration, and no universal rule can be laid down."—*Southern Ry. Co. v. Guyton*, 122 Ala. 231, 25 South. 34; *Haas v. Balch*, 6 C. C. A. 201, 56 Fed. 984. We are of opinion that the question of contributory negligence was one for the jury, and the general affirmative charge was properly refused.

There is evidence in the record which tends to support the case as made by counts 1 and 2 of the complaint; hence charges 2 and 3 were properly refused.—*Sloss Iron & Steel Co. v. Tilson*, 141 Ala. 152, 37 South. 427. Charge 6 pretermits all inquiry as to negligence on the part of the defendant and hypothesizes none on the part of the plaintiff. It was properly refused.

Having found no error in the record, the judgment appealed from is affirmed.

Affirmed.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.