# Atlantic Coast Line Ry. Co. *v.* Jones.

## *Injury to Servant.*

(Decided November 11, 1913. Rehearing denied December 9, 1913. 63 South. 693.)

1. *Appeal and Error; Orders Appealed From.*—Where the transcript contains proper appeal bond both from the original judgment, and from the order denying the motion for a new trial, the appellate court will consider the assignments of error based on the rulings of the court in the original trial, as well as those based on the refusal of a new trial.

2. *Same; Review; Questions Presented; Necessity of Exception.*—In the absence of an appropriate exception, the improper joinder in a complaint of counts seeking recovery under the Federal Employers' Liability Act, and under the State Employers' Liability Act, cannot be considered on appeal.

3. *Same; Review; Sufficiency of Evidence.*—As every reasonable presumption is indulged as to the rightfulness of the judgment of the trial court in refusing to set aside a verdict as contrary to the evidence the declination of the lower court to set it aside will not be disturbed on appeal where the verdict is based on conflicting testimony.

4. *Same; Presumption.*—Where complaint is made of the denial of a new trial on the grounds of newly-discovered evidence, unless the bill of exceptions purports to contain all of the evidence offered before the court on the hearing of the motion, it will be presumed on appeal that there was evidence before the lower court authorizing its denial of the motion.

5. *Master and Servant; Injury to Servant; Complaint.*—Where a count is based on subdivision 1, section 3910, Code 1907, it is not bad because containing alternative averments of negligence; in this case, there was but one specification of negligence which was the defect in the engine on which plaintiff was riding.

[Atlantic Coast Line Ry. Co. v. Jones.]

6. *Same.*—A count alleging that the injury was caused to the servant by a defect in defendant's engine, which was a part of the ways, works, machinery, etc., is sufficient without designating what portion of the engine was defective.

7. *Same.*—Under section 3910, Code 1907, subdivision 3, a count in the complaint averring that the servant was thrown from a fast moving locomotive on which he was riding, and which he was watching in conformity to the direction of the conductor of defendant, to whose orders he was bound to conform and did conform, and that the injury was the proximate result of having conformed to such negligent order is sufficient.

8. *Same.*—In a personal injury action by a servant of a railroad company, a count relying on the Federal Employer's Liability Act which alleged that plaintiff was a servant engaged in interstate commerce, and that while so engaged, he was thrown from a fast moving engine by a defect in the engine, due to defendant's negligence, was sufficient without alleging that defendant had knowledge of the defect or failed to use due care to acquire the knowledge.

9. *Same; Jury Question.*—Under the evidence in this case it was for the jury to determine the question of the negligence of the conductor who had power of supervision over the plaintiff servant.

10. *Same.*—The question of the servant's contributory negligence in continuing to ride on a dead engine after having complained to the conductor of its defective condition was one for the jury.

11. *Same; Contributory Negligence.*—As the question of the contributory negligence of the servant depends upon the nature and degree of the danger, the extent of the servant's appreciation of it, and the exigencies of the work no absolute rule as to contributory negligence can be formulated, particularly as the servant has the right to rely upon the superior judgment of the master, and its superintendents.

12. *Action; Joinder.*—It is permissible to join in one action causes based on a violation of the Federal Employer's Liability act with those based on the Employer's Liability act of this state, since the jurisprudence of the state and Federal governments form together one system constituting the law of the land and the state courts have concurrent jurisdiction with the Federal courts under the Federal Employer's Liability Act.

13. *Commerce; Interstate; Instrumentality.*—An engine which is being hauled by an interstate train from one state to another is an instrumentality of interstate commerce, and the fact that it was not then put to use did not change its character as one of the instrumentalities ordinarily used by the railroad company in carrying on its business.

14. *Same; Persons Engaged in.*—A servant of a railroad company who was acting as caretaker or watcher of a dead engine which was being hauled from one state to another by an interstate train is engaged in interstate commerce within the purview of the Federal Employer's Liability Act.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

[Atlantic Coast Line Ry. Co. v. Jones.]

Action by Will Jones against the Atlantic Coast Line Railway, for injuries while in its employment. Judgment for plaintiff, and defendant appeals. Affirmed.

Count 2, after alleging the business in which defendant was engaged and the relation existing between plaintiff and defendant, and that while engaged in the discharge of his duties in the business of defendant, he suffered certain injuries which are alleged, avers that plaintiff was caused to be thrown from an engine as aforesaid by reason of and as a proximate consequence of a defect in the ways, works, machinery, or plant connected with or used in the business of defendant, in this: That the engine on which he was riding was defective, which said defect arose from, or had not been discovered or remedied, owing to the negligence of defendant, or of some person in the service or employ of defendant, and intrusted by defendant with the duty of seeing that its ways, works, machinery, or plant were in proper condition.

Count 3½, after alleging the same matters as alleged in count 2, alleges that he was thrown from a fast-moving locomotive on which he was riding, and which he was watching in conformity to the orders and directions of the conductor, who was then and there in the employment and service of defendant, and while acting within the scope of his employment, and to whose orders and directions plaintiff was bound to conform, and did conform. "Plaintiff avers that his said injuries arose from the negligence of said conductor, whose name is unknown to plaintiff, in negligently ordering and directing him to ride on and watch said engine as aforesaid, knowing said engine was defective, and that in complying with said orders so negligently given, plaintiff was injured as aforesaid; and plaintiff says that

the said injuries resulted to him from and as a proximate consequence of the negligent order of said conductor, who was then and there in the employment of defendant, and to whose orders plaintiff was bound to conform, and did conform, and while so conforming."

Count 7: "Plaintiff claims of defendant the sum of $1,999 as damages, for that plaintiff avers that on, to wit, the 7th day of November, 1911, defendant, the Atlantic Coast Line Railroad Company, is a corporation duly organized under the laws of the state of Alabama, Georgia, and other states, and is a citizen of said state, and is engaged in commerce between the several states, to wit, Alabama and Georgia, and on such date and day, and as such corporation was engaged in the business of operating a railroad, and running trains of cars and engines thereon, from the state of Georgia to the state of Alabama, and into the county of Montgomery in said state of Alabama, and that on said day and date in said states, plaintiff was a servant or employee of defendant, and engaged in such interstate commerce, and while in such service or business of defendant, and on a train composed of an engine and cars engaged in such interstate commerce, and while in the discharge of his duties as such, and while within the county of Montgomery in the state of Alabama, he was negligently thrown from a fast-moving engine to the ground, and on which engine he was in the discharge of his duties as such employee, and was thereby bruised [here follows catalogue of injuries], and plaintiff avers that he was negligently thrown, or caused to be thrown, from said engine as aforesaid by reason of and as a proximate consequence of the negligence of such carrier by reason of a defect and insufficiency, due to its negligence, in its engine, in that said engine on which plaintiff was riding was defective—for all of which plaintiff claims

·damages under and by force of the act of Congress approved April 22, 1908, and under an act to amend an act entitled an act relating to liability of common carriers by railroads to their employees, in certain cases, approved April 22, 1908, and which said amendatory act was approved April 5, 1910 (Act April 5, 1910, c. 143, :36 Stat. 291 [U. S. Comp. St. Supp. 1911, p. 1324]), :and both of which acts of Congress were relative to liability of common carriers by railroads engaged in commerce between the states."

JOHN R. TYSON, and A. H. ARRINGTON, for appellant. It is too plain for argument that an engine on a railroad is no part of its ways, or its works, or of its plant.—2 LeB. 1968 and notes. Each alternative must state a cause of action.—5 Mayf. 754. The demurrers to count 2, therefore should have been sustained. Count $3\frac{1}{2}$ seeks to impose liability under subd. 3, sec. 3910, Code 1907, and comes within the principles laid down in the case of *Ala. v. Hammond*, 156 Ala. 253. The demurrers to it should have been sustained. The complaint contained a misjoinder of causes of action joining counts under the state and under the Federal Employers' Liability Acts, as contributory negligence can be pleaded to one and not to the other as a defense, and the statute of limitation with respect to the two actions is different. Count 7 was defective in many respects and wholly insufficient.—*L. & N. v. Jones*, 130 Ala. 456; *T. C., I. & R. R. Co. v. Smith*, 171 Ala. 251. The dead engine upon which plaintiff was riding undisputedly carried no interstate commerce. Thornton's Fed. Employers' Liability, p. 286. Counsel discuss the action of the court on its application for a new trial, but without further citation of authority. The affirmative charge as to count $3\frac{1}{2}$ should have been given, because the

[Atlantic Coast Line Ry. Co. v. Jones.]

plea of contributory negligence was proven without conflict.—*Alteriac v. West P. C. Co.*, 161 Ala. 435; *Gainor v. Southern*, 152 Ala. 186; *Coosa Co. v. Williams*, 133 Ala. 606; *Eureka Co. v. Bass*, 81 Ala. 213.

WILLIAM H. and J. R. THOMAS, for appellee. It does not appear from the bill of exceptions that it contains all the evidence pro and con on the motion for new trial, and this court will presume that there was evidence sustaining the action of the trial court.—*Crews-Splawn L. Co. v. Sorrell*, 165 Ala. 259; *M. & B. R. R. Co. v. L. & N. R. R. Co.*, 172 Ala. 313. The 2nd count was sufficient.—*McNamara v. Logan*, 100 Ala. 193; *L. & N. v. Hawkins*, 97 Ala. 245; *Mary Lee C. Co. v. Chambliss*, 97 Ala. 172; *Sloss-S. Co. v. Smith*, 166 Ala. 440. Count 3½ was sufficient.—Subd. 3, sec. 3910, Code 1907; *L. & N. v. Goss*, 127 Ala. 324; *A. C. C. & I. Co. v. Heald*, 171 Ala. 268, 181 Mass. 390. There was no misjoinder.— *Sloss-S. S. & I. Co. v. Tilson*, 141 Ala. 152; *B. & K. R. R. Co. v. Lintner*, 141 Ala. 428; *L. & N. v. Mothershed*, 97 Ala. 261.

PELHAM, J.—The appellant prosecuting this appeal was the defendant in the court below. The only counts in the plaintiff's complaint not eliminated in the process of pleading, or by charges of the court, are counts 2, 3½, and 7, and it will not be necessary to consider rulings on other counts shown by the record. Counts 2 and 3½ are drawn under and base a right of action on the state Employers' Liability Act.—Code, § 3910. Count 7 is drafted by the pleader to seek a recovery under the act of Congress known as the federal Employers' Liability Act.

The point made, and so strenuously insisted upon by the appellee's counsel, that this appeal is only from

the judgment of the court below overruling defendant's motion for a new trial, and not from the original judgment rendered against the defendant on the trial of the case, and that the rulings of the court on the original trial are not before us for review, is untenable. The transcript contains properly worded appeal bonds, approved by the proper officer of the trial court, from the original judgment, and from the judgment on the motion for a new trial, and we will consider the assignments of error based on the rulings of the court in the original trial, as well as the assignments on the ruling refusing to grant the motion for a new trial.

There is nothing in the demurrer attacking the second count as bad because containing alternative averments stating no cause of action. The plaintiff in this count alleges but one breach resulting in injury, and no conjunctive or disjunctive causes of action. There was but one specification of negligence as such made; that was the defective engine, and the defendant was clearly informed of the matter to be put in issue under the allegations of this count.—*Birmingham R. L., & P. Co. v. Hunnicutt,* 3 Ala. App. 448, 57 South. 262. The gravamen of the count is the averment of but one cause of action, grounded on the negligence of the defendant by reason of a defect existing in its ways, works, machinery, or plant producing the injury. The averment in this count, particularizing what part of the ways, works, machinery, or plant was defective by naming the defective instrumentality—that is, averring that the engine on which the plaintiff was riding was defective, without designating the particular part of the engine— is sufficient.—*Mary Lee Coal Co. v. Chambliss,* 97 Ala. 172, 11 South. 897; *Sloss-Sheffield Steel & Iron Co. v. Hutchinson,* 144 Ala. 221, 40 South. 114; *West Pratt Coal Co. v. Andrews,* 150 Ala. 368, 43 South. 348.

Count 3½ is drawn under subdivision 3 of section 3910 of the Code, and contains, as we read it, a sufficient averment that the conductor had supervision or control of the engine in the train of cars on which the plaintiff was riding, for the purpose of "watching it," under the directions and orders of the said conductor. The injury is clearly ascribed to the *negligent giving of an order* "to ride on and watch the engine," averred as known at the time to be defective to the conductor who gave the order to the plaintiff, a person in the employment of the common master, to whose orders or directions the plaintiff was bound to and did conform. Under the generality of averments of negligence allowed in complaints under the established rule in this state, the allegation in this particular in the count under discussion was all that is required.—*K. C., M. & B. R. R. Co. v. Flippo,* 138 Ala. 487, 35 South. 457; *Republic I. & S. Co. v. Williams,* 168 Ala. 612, 53 South. 76; *Reiter-Connolly Mfg. Co. v. Hamlin,* 144 Ala. 192, 40 South. 280.

Count 7 is also attacked because of the generality of its averments, but objections because of the generality of averments of negligence in a complaint, amounting to little, if any, more than the conclusions of the pleader, are untenable under the rulings of the Supreme Court running back as far as *Leach, et al. v. Bush, et al.,* 57 Ala. 145. The defect in the engine is alleged as having been due to the negligence of the defendant, and it was therefore unnecessary to aver that the defect had not been discovered or remedied owing to the negligence of the defendant, as contended by appellant. The allegation that the defect was due to the negligence of the defendant was equivalent, in legal effect, to saying that the defendant had knowledge of the defect, or failed to use due care to acquire knowledge of it. The allegation in this count that the plaintiff was negligently thrown,

or caused to be thrown, from the engine as a proximate consequence of the negligence of the defendant by reason of a defect in the said engine, which defect was due to defendant's negligence, is a sufficient averment in this particular.

No exception is shown to have been reserved to the ruling of the court on defendant's motion to strike count 7, drafted under the federal act, as improperly joined with counts 2 and 3½, seeking a recovery under the Employers' Liability Act of this state, as is necessary to properly present the question.—*Gaston v. Marengo Imp. Co.,* 139 Ala. 465, 36 South. 738.

It may be permissible to say, however, that the court was not in error in its rulings on this motion. The systems of jurisprudence of the state and of the United States together form one system which constitutes the law of the land for the state, and *concurrent jurisdiction* with the federal courts is conferred on the state courts by the federal act in the enforcement of rights of action accruing under it. Under the practice in vogue in this state, separate and independent causes of action arising out of the same transaction and relating to the same subject-matter may be joined in different counts of the same complaint, and one who is entitled to sue for the consequences of a wrongful or negligent act of another is not required to split up his cause of action, but may recover all the damages in one action. —*Birmingham So. Ry. Co. v. Latimer,* 141 Ala. 420, 28 South. 363, 109 Am. St. Rep. 40, 3 Ann. Cas. 461; *B. R., L. & P. Co. v. Norris,* 2 Ala. App. 610, 56 South. 739; *B. T. & T. Co. v. Still,* 7 Ala. App. 556, 61 South. 611; *C. of G. Ry. Co. v. Morgan,* 161 Ala. 483, 49 South. 865. See, also, the discussion of the right to bring an action under the provisions of the federal act, common law,

and state statute in the case of *Ullrich v. N. Y., N. H. & H. R. R. Co.* (D. C.) 193 Fed. 768.

The defendant requested the general charge on count 3½ of the complaint, and insists that the refusal of the court to give this charge is error because there was no proof offered on the trial to show that the conductor was authorized to give the negligent order testified to by plaintiff, or that the plaintiff was bound to obey the order; the order in question of the conductor, as testified to by the plaintiff being in effect an order given the plaintiff to go, or remain on the engine and go outside and watch it, *after the conductor knew of the defective condition of the engine.* The plaintiff testified that at the time he received his injuries he was a messenger in the employ of the defendant, engaged in watching and looking after a "dead" engine or locomotive of the defendant, on which he was riding, that was coupled to the freight cars in a train running from Thomasville, Ga., to Montgomery, Ala., over defendant's railroad. It was the plaintiff's duty while en route, as testified by him, to oil the engine, keep it cool, watch it, and if he saw anything wrong, to report it to the conductor. In the performance of these duties of his employment, according to the plaintiff's testimony, he did see something wrong with the engine, and reported it to the conductor, and received the order from the conductor as testified to by him in that connection. The conductor as a witness for the defendant denied that he gave the plaintiff such an order, and stated that it was not his place to tell the plaintiff anything, but also stated on cross-examination that "to a certain extent" the entire train and every employee on it was under his charge and control; that the plaintiff was a watchman on the dead engine being hauled in the train under his charge as conductor; and that it was the plaintiff's duty, in con-

nection with that employment, to notify him (the conductor) if there was anything wrong with the engine. We are of the opinion that on this state of the evidence the court properly left to the jury the question of the authority of the conductor to give the order and the duty of the plaintiff to obey it.

It is further urged that the general charge should have been given as requested by the defendant as to this count (3½) because, it is insisted, the defendant's plea of contributory negligence was proven by the plaintiff's testimony. It is true, as emphasized by counsel for appellant in brief, that the evidence as set out in the bill of exceptions shows that in the conversation testified to by the plaintiff as having been had between himself and the conductor when the train was stopped at Sprague Junction, just prior to the time of receiving the order complained of, the plaintiff did ask the conductor to put the engine out of the train and have it fixed by a machinist, as it was in bad shape, and did say he did not want to risk it, as "it might derail us and kill us." It is also true that it is further shown that the plaintiff testified that after he had made this statement to the conductor, in the conversation with him referred to, and the conductor had answered by saying something about the defendant company's having lots of money, he then replied, "All right, I do not want to get killed," and that almost immediately after this conversation the plaintiff obeyed the order given him by the conductor to go back upon the engine, and that he remained on the engine from that time until the train pulled out from Sprague Junction a few minutes afterward, and up to the time of receiving his injuries. The evidence of the plaintiff also shows that at the time the order was given the conductor and the plaintiff were standing on the ground close to the dead engine (the

train having stopped at Sprague Junction), and that the conductor examined the engine, said he thought it would make the trip all right, declined to set it out of the train, and ordered the plaintiff to go on the engine and stay on the outside and watch it during the remainder of the trip to Montgomery, Ala. (the point of destination, about 20 miles distant), and if it got any worse to let him know. It does not seem to us that the evidence of the plaintiff can be said to show, as a matter of law, that he was guilty of contributory negligence, and the trial court properly, in our opinion, left that question to the jury. It is not necessarily the only import that can be given to the plaintiff's conversation with the conductor that there was a positive knowledge and appreciation on his part that by obeying the order he would put himself in the range of an obvious danger. He was only giving his opinion to his superior of what "might" happen.

As said by Justice Denson in delivering the opinion of the court in *Birmingham M. & C. Co. v. Skelton,* 149 Ala. 465, 473, 43 South. 110, 112, quoting from Justice Holmes in *McKee v. Tourtellotte,* 167 Mass. 69, 44 N. E. 1071, 48 L. R. A. 542, "the nature and degree of the danger, the extent of the plaintiff's appreciation of it, and the exigency of the work, all enter into consideration, and no universal rule can be laid down." "The servant does not stand on the same footing with the master. His duty is obedience, and if, when in the discharge of that duty, he is damaged through the neglect of the master, it is but meet that he should be recompensed. The essential inequality in the positions of the parties is deemed to warrant the deduction that a prudent man has a right, within reasonable limits, to rely upon the ability and skill of the agent in whose charge the common master has placed him, and is not bound at

his peril to set his own judgment above that of his superior. In other words, when a servant did not assert his judgment in opposition to the supposed better judgment or stronger will of the master, the law usually allows the jury to determine whether he was negligent, or acted in reliance upon the judgment of his master, or out of a constrained acquiescence in the rule of obedience, which his relation as servant imposed."—*Ala. Steel & Wire Co. v. Tallant*, 165 Ala. 521, 532, 51 South, 835, 839.

According to the plaintiff's testimony, the conductor examined the defective condition of the engine that was the subject of discussion and gave it as his judgment that it would make the remainder of the trip all right, and proceeded on the journey in charge of the train of which the engine was a part, thus giving assurance of its safety to the plaintiff. The conductor was the plaintiff's superior, and from the nature of the callings of the two men, the plaintiff would appreciate that the conductor would be able to make a more accurate forecast, and he would have the right to rely upon the skill and ability of his superior and obey his orders within reasonable limits. When the order was given, the train was about to be put in motion. Unless the plaintiff obeyed the order and got upon the engine, he would probably be left by the wayside at a place some 20 miles from the place of his destination; he necessarily must act quickly on the exigency of the moment. In doing so and obeying the order, can he, under all of the circumstances, be said to be guilty of contributory negligence as a matter of law, or is it not rather a complex question for the jury, under the particular circumstances, to say whether or not he was justified, as a prudent man, in surrendering his own opinion and obeying the superior's command? We do not think the court

should have determined the question as one of law, but properly referred it to the jury.—*Birmingham M. & C. Co. v. Skelton,* 149 Ala. 465, 43 South. 110; *So. Ry. Co. v. Guyton,* 122 Ala. 231, 25 South. 34; *Ala. Steel & Wire Co. v. Tallant, supra.*

It is claimed by appellant's counsel in brief that the plaintiff failed to prove a cause of action under the seventh count of the complaint, framed under the federal Employers' Liability Act, in that, as the dead engine on which plaintiff was riding while engaged in his employment as a messenger or watchman carried no traffic and was not being used for the purpose of hauling cars carrying commerce, it is argued that it was not an instrumentality used by the defendant at the time in interstate commerce, and that, therefore, the plaintiff could not be said to have been injured "while" engaged in interstate commerce. It was shown by the evidence that the plaintiff, an employee of the defendant, was sent by the defendant from Montgomery, Ala., to Thomasville, Ga., to bring back over its railroad between those points a dead engine—that is, an engine not running under its own motive power, but pulled or hauled in a train of cars in a manner similar to that in which ordinary cars are pulled or hauled over the rails by a live engine as a means of motive power. The plaintiff's duties required him, while engaged in this employment, to ride on the dead engine from Thomasville, Ga., to Montgomery, Ala., as "messenger" or "watchman," which we gather from the evidence to be an employment in this instance in the nature of a caretaker. The plaintiff was injured while engaged in the performance of his duties under this employment, as he had gone to Thomasville, Ga., and was returning to Montgomery, Ala., on the engine in a train of cars operated by the defendant over its railroad, at the time he received the

injuries of which he complains, at a point in the state
of Alabama, on defendant's railroad, about 20 miles, or
less, distant from Montgomery. The dead engine upon
which the plaintiff was riding at the time he received
the alleged injuries was part of a train operated by
the defendant and engaged in carrying, in part, through
freight cars with shipments of freight from points in
the state of Florida, routed by way of Thomasville, in
the state of Georgia to destination at Montgomery, and
other places in the state of Alabama. Clearly the de-
fendant was at the time engaged in interstate com-
merce, and the dead engine was one of the instrumen-
talities ordinarily used by the defendant in carrying on
its business, and the fact that this instrumentality was
not being put to the precise use for which it was de-
signed at the particular time when the injury occurred
to the plaintiff does not alter the fact that the defendant
was engaged in an act of interstate commerce at the
time the plaintiff was injured, and that the plaintiff
was in the performance of his duties in the line of his
employment and was injured by the defective condition
(as he claims) of one of the instrumentalities ordinarily
used in that business by the defendant, but at that time
temporarily removed from service. Suppose there had
been an empty freight car unfit for the service of haul-
ing freight being carried in this train engaged in inter-
state commerce between the states of Georgia and Ala-
bama, and the plaintiff had gone upon this car and been
injured as a proximate consequence of a defect in the
car while in the performance of the duties of his em-
ployment on the train, as, say, a brakeman, while en
route between these two points in the different states.
Could it be said in such a case that, because the freight
car at the time of the injury was not fit for use and
not being used at that particular time as an instru-

mentality of interstate commerce or traffic, the plaintiff was not performing any act for the defendant with respect to its engagement in interstate commerce, and that the plaintiff was not injured "while" engaged or employed by defendant in such commerce, and therefore not under the protection and influence of rights secured to employees under the federal Employers' Liability Act? We think not. Nor do we think that it could fairly be said that the plaintiff in the instant case was not injured while engaged or employed by the defendant in interstate commerce. It is the substance of things that should be looked to in dealing with rights created and conserved under the authority of the federal Constitution (*Crenshaw v. Arkansas,* 227 U. S. 389, 33 Sup. Ct. 294, 57 L. Ed. 565), and the act under consideration should be as broadly and liberally construed as possible.—*Behrens v. Ill. Cent. R. Co.* (D. C.) 192 Fed. 581. If the plaintiff's services were necessary in the capacity in which he was acting for his employer (and we may assume from the fact of his employment that they were), then, the defendant, his employer, being engaged at the time of the injury in carrying on interstate commerce, the effect of a personal injury to plaintiff, incapacitating him for the duties of his employment, tended to delay or hinder the movement or impede the progress or safety of a train engaged in interstate commerce, and would come under the purview of the federal Employers' Liability Act.—*Lamphere v. Oregon R. & Nav. Co., et al.,* 196 Fed. 336, 116 C. C. A. 156. It has been held that an employee of a common carrier engaged in interstate commerce is within the meaning and under the protection of the federal Employers' Liability Act, who was injured while engaged, in repairing a refrigerator car, indiscriminately used in interstate and intrastate traffic, as occasion required,

but not at the time of the injury in use for the purpose of carrying commerce.—*Nor. Pac. Ry. Co. v. Maerkl,* 198 Fed. 1, 117 C. C. A. 237.

In *Colasurdo v. Central Railroad of New Jersey* (C. C.) 180 Fed. 832, it was held by the United States Circuit Court, and affirmed by the United States Court of Appeals, 192 Fed. 901, 113 C. C. A. 379, that the act applies to a repairer of a switch used for both interstate and intrastate commerce. It was said by the court in the opinion rendered in this case: "We think the statute [referring to the federal Employers' Liability Act] was intended to apply to every carrier while engaging in interstate commerce, and to an employee of such carrier while so engaged, and, if these conditions concur, the fact that the carrier and the employee may also be engaged in intrastate commerce is immaterial."—192 Fed. page 903, 113 C. C. A. page 381. This holding effectually answers the contention of appellant that it was entitled to the general charge on the seventh count because it was alleged in that count that the plaintiff was injured while on a train composed of an engine and cars engaged in interstate commerce, while the evidence showed that only a part of the cars in the train were engaged in carrying interstate traffic. To the same effect is the case of *Horton v. Seaboard Air Line Ry. Co.,* 157 N. C. 146, 72 S. E. 958. As illustrating the construction put upon the federal Employers' Liability Act by the federal courts, supporting, we think, the construction we have given to it as applied to the instant case, see *Darr v. Baltimore & O. R. R. Co.* (D. C.) 197 Fed. 665; *Zikos v. Oregon R. & Navigation Co.* (C. C.) 179 Fed. 893; *Behrens v. Ill. Cent. R. Co.* (D. C.) 192 Fed. 581; and *Second Employers' Liability Cases,* 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. See, also, the following holdings by different

state courts: *Neil v. Idaho & W. N. R. R.,* 22 Idaho 74, 125 Pac. 331; *Kansas City. M. & O. Ry. Co. of Texas v. Pope, et al.* (Texas Civ. App.) 152 S. W. 185; *Jones v. Chesapeake & O. Ry. Co.,* 149 Ky. 566, 149 S. W. 951; *Pedersen v. Delaware, L. & W. R. R. Co.,* 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125.

In this connection, a decision by our Supreme Court in the case of *Kansas City, M. & B. R. R. Co. v. Flippo,* 138 Ala. 487, 35 South. 457, is called to our attention by counsel for appellee in brief. The holding in that case, on a state of facts showing less connection of the use of the instrumentality of commerce with interstate traffic at the particular time of injury than in the present case, was that it should have been left to the jury to determine if at the time of the accident the car was being used in interstate commerce. It is illuminative by analogy of the subject, and tends to point the way to a proper construction by this court of the federal statute under consideration, that our Supreme Court, in speaking of the federal Safety Appliance Act, said in the opinion of the court in *M., J. & K. C. R. Co. v. Bromberg,* 141 Ala. 258, 274, 37 South. 395, 398: "It would be a narrow and limited construction of this statute to say that it was only applicable in cases where the cars at the very moment of the injury are being actually used in moving traffic."

It is our conclusion that the court ruled correctly in refusing the general charge requested by the defendant on the seventh count of the complaint.

From what has been said with reference to count 3½, it will be seen that it is our opinion that it was not error to refuse the general charge for the defendant on the second count.

After verdict and judgment in favor of the plaintiff for $500, the defendant made a motion for a new trial,

and the court, upon considering the motion, with plaintiff's consent, reduced the amount of the judgment to $430, and overruled the motion. Only two of the grounds assigned in the motion are insisted upon here: First, that the verdict was contrary to the weight of the evidence; and, second, newly discovered evidence.

We have carefully considered the evidence, and cannot say, under the rules obtaining in an appellate court when reviewing the ruling of a primary tribunal, that the trial court in this instance was in error in refusing to set aside the findings of the jury on the evidence and grant the defendant a new trial because of the insufficiency of the evidence to support the jury's finding. The evidence was in conflict, and its preponderance depended upon the credence given it. On a review of the action of a trial court in denying the motion, it is not to be disturbed, where the record shows this state of evidence, as every reasonable presumption is to be indulged in favor of the action of the trial court in refusing to set aside the verdict because contrary to the evidence. —*Mobile L. & Ry. Co. v. Davis,* 1 Ala. App. 338, 55 South. 1020; *Montgomery-M. Mfg. Co. v. Leeth,* 2 Ala. App. 324, 56 South. 770; *L. & N. R. R. Co. v. Hutcherson,* 174 Ala. 609, 57 South. 379; *U. S. C. I. P. & F. Co. v. Granger,* 172 Ala. 546, 55 South. 244.

Furthermore, it must be concluded, under the rulings of the Supreme Court, that the point made by counsel in behalf of appellee is well taken, in that, as the bill of exceptions, wherein it refers to the motion for a new trial, does not purport to contain all of the evidence offered before the court on the hearing of the motion, the presumption must be indulged that there was evidence before the court sustaining and justifying its conclusion in denying the motion. The bill of exceptions in this particular does not purport to set out all of the

[Atlantic Coast Line Ry. Co. v. Jones.]

evidence or all of its tendencies, and the Supreme Court, whose rulings this court is required by statute to follow, has in a great number of cases rigorously applied the rule that, where a bill of exceptions fails affirmatively to show that it contains all the evidence any state of evidence will be presumed to uphold the ruling of the trial court.—*Lamar v King,* 168 Ala. 285, 53 South. 279; *S. M. Insurance Co. v. Holcombe,* 35 Ala. 328; *Dickens v. State,* 142 Ala. 51, 39 South. 14, 110 Am. St. Rep. 17; *Lewis L. & L. Co. v. Interstate L. Co.,* 163 Ala. 592, 50 South. 1036; *Beard v. Du Bose,* 175 Ala. 411, 57 South. 703; *Middlebrooks v. Sanders,* 61 South. 898. The same rule has been applied by the Supreme Court to cases where the evidence offered is on the hearing of a motion for a new trial (*M. & B. R. R. Co. v. L. & N. R. R. Co.,* 172 Ala. 313, 54 South. 1002; *Cruise-Splawn L. Co. v. Sorrell,* 165 Ala. 259, 51 South. 727), and to cases tried before the court without a jury (*Evansville Packet Co. v. Slater,* 101 Ala. 245, 15 South. 241; *Hunt v. Johnson,* 96 Ala. 130, 11 South. 387; *Hood v. Pioneer Co.,* 95 Ala. 461, 11 South. 10; *Prime v. A. C. I. Co.,* 171 Ala. 343, 54 South. 547).

The application of this rule under the holdings of the Supreme Court to the case in hand disposes of any necessity to discuss the second ground assigned, as it was necessary, to a proper review of the ruling assigned as error on that ground, that the bill of exceptions affirmatively show that it contained all the evidence before the court on the hearing of the motion; for, nothing to the contrary appearing, it will be presumed, in support of the trial court's ruling, that there were affidavits or other testimony before the court on the hearing showing that the newly discovered evidence relied on had not been discovered since the trial, or that it

could have been discovered before the trial by the use of due diligence, or that it did not fall within some other legal requirement pertaining to granting motions on newly discovered evidence.

We find no error among those assigned and insisted upon authorizing a reversal of the judgment of the lower court.

Affirmed.