Bowen v. Swander et al.

121 164
121 365
122 286
121 164
126 495
121 164
129 65
129 550
121 164
130 21
121 164
131 115
131 169
121 164
134 525
136 424
121 164
139 244
121 161
140 283
140 575
121 164
145 48
121 164
149 159
150 70
121 164
162 335
121 164
164 93
121 164
170 314

No. 13,889.

## BOWEN v. SWANDER ET AL.

SPECIAL JUDGE.—*Appointment.*—*Objection.*—*Supreme Court.*—Where no objection is made to the appointment of a judge or to his authority to act as judge *pro tempore* at any stage of the proceedings, an objection to his appointment will not be considered by the Supreme Court.

PRACTICE.—*Venire de novo.*—*Special Finding.*—A *venire de novo* will not be granted for any other cause than a defect in the form of the special finding.

GUARDIAN AND WARD.—*Partition.*—A guardian is authorized by sections 1194 and 2542, R. S. 1881, to institute an action of partition in the ward's behalf and prosecute it in his own name.

REAL ESTATE.—*Adverse Possession.*—*Color of Title.*—Continuous possession of real estate under claim of ownership for thirty years or more confers a complete title. The adverse possession need not be under color of title in this State.

TAX SALE.—*Deed.*—*What Claimant Must Show.*—One making a claim of ownership to real estate under a sale for delinquent taxes, must establish affirmatively that all the requirements of the law, from the listing of the property to the execution of the deed, were strictly complied with.

PARTITION.—*Action.*—*Statute of Limitations not Available.*—An action for partition is not an action for possession, and the statutory five years' period of limitation is not available to one resisting it.

HUSBAND AND WIFE.—*Antenuptial Agreement.*—*Marital Right.*—*Will.*—*Life-Estate.*—Where, by an antenuptial agreement upon a valuable consideration, the husband deprives himself of his marital rights in his wife's land, and by the will of the testatrix takes a life-estate in the whole of the real estate, setting up no other claim to the real estate, he will be deemed to have accepted the provisions of the will, and no one else can interpose any other claim in his behalf.

WILL.—*Construction of.*—*Failure to Name Executor.*—*Tenants in Common.*—*Partition.*—Where real estate is devised to one for life, and after his death the proceeds of the sale thereof, directed by the will to be made, to certain named devisees, no executor being named in the will—the manner of making the sale, and by whom, being unprovided for—the devisees become tenants in common of the real estate after the death of the life-tenant, and may maintain partition.

TENANTS IN COMMON.—*In Exclusive Possession.*—*What Chargeable with.*—A tenant in common who has been in exclusive possession, denying the

rights of other tenants in common, must account for his own use and occupation as well as for rents received from third persons.

From the Carroll Circuit Court.

*J. Applegate* and *C. R. Pollard,* for appellant.

*J. C. Odell, M. A. Ryan, R. C. Pollard* and *L. D. Boyd,* for appellees.

BERKSHIRE, J.—This was an action in partition to quiet title and for an accounting.

The appellee Swander was the plaintiff below; the appellee Smaltz was one of the defendants, as was the appellant; there was another defendant, Henry H. Fisher, who was defaulted.

Mrs. Smaltz filed a cross-complaint, substantially the same in its averments as the complaint.

The appellant filed a cross-complaint, averring that he was the owner of the whole of the real estate, and asking that his title be quieted.

Issue was joined upon the complaint and each of the cross-complaints, and the cause submitted to the court, with a request for a special finding.

The court returned a special finding, and the conclusions of law being favorable to the appellees, the appellant excepted thereto. He then filed a motion for a new trial, which the court overruled, and he reserved an exception; he then moved in arrest of judgment, which motion the court overruled, and he excepted; he then moved that a *venire de novo* be awarded, which motion was overruled by the court, and he saved an exception, and the court then rendered judgment for the appellees.

The errors assigned are as follows:

1st. The court erred in overruling the appellant's motion for a new trial.

2d. The court erred in its conclusions of law on the facts found.

3d. The court erred in overruling appellant's motion for a *venire de novo.*

4th. The court erred in overruling appellant's motion in arrest of judgment.

5th. The complaint does not state facts sufficient to constitute a cause of action.

6th. The cross-complaint of Florinda Smaltz does not state facts sufficient to constitute a cause of action.

Whether the complaint, or the cross-complaint of Mrs. Smaltz, would be good as against a demurrer, is a question not before us; these pleadings are clearly sufficient as against a motion in arrest of judgment, and sufficiently good when questioned for the first time by the assignment of error in this court. *Peters* v. *Banta,* 120 Ind. 416; *Laverty* v. *State, ex rel.,* 109 Ind. 217; *Baltimore, etc., R. R. Co.* v. *Kreiger,* 90 Ind. 380; *Smith* v. *Smith,* 106 Ind. 43.

No objection was made to Judge Suit's appointment, nor to his authority to act as judge *pro tempore* at any stage of the proceedings. In the case of *Cargar* v. *Fee,* 119 Ind. 536, the judge who delivered the opinion said: "An appointment of a judge *pro tempore,* although not regularly made, constitutes the appointee a judge *de facto,* and the acts of a judge *de facto* can not be overthrown in a collateral attack, nor, indeed, in a direct attack, unless the objection is promptly made." *Smurr* v. *State,* 105 Ind. 125; *Schlungger* v. *State,* 113 Ind. 295; *Bartley* v. *Phillips,* 114 Ind. 189; *Greenwood* v. *State,* 116 Ind. 485; *Littleton* v. *Smith,* 119 Ind. 230; *Hayes* v. *Sykes,* 120 Ind. 180.

The court did not err in overruling the motion for a *venire de novo.*

The special finding was not defective in form, and for no other cause will a writ of that character be awarded.

This leaves but the first and second alleged errors undisposed of, and these we will consider together.

The action was well brought in the name of the guardian.

Section 1194, R. S. 1881, reads thus: "In all proceedings under this act, (partition) guardians may act for their wards as their wards might have acted, being of age."

Section 2542 reads as follows: "The guardian of any minor may join in and assent to a partition of the real estate of such minor under the direction of the court, upon a petition for partition."

These statutory provisions clearly authorized the guardian to institute the action and prosecute it in his own name. *Bundy* v. *Hall*, 60 Ind. 177; *Miller* v. *Smith*, 98 Ind. 226.

That the testatrix, Catherine Murphy, died the owner of the real estate involved in this litigation there can be no question. She, and those under whom she claimed, had at the time of her death been in the continuous possession of said real estate under claim of ownership for over thirty years. This gave her a title as good as though she had received a patent directly from the government.

It is not and never has been the law of this State that there must be color of title before an adverse possession will ripen into a title. *Collett* v. *Board, etc.*, 119 Ind. 27; *Roots* v. *Beck*, 109 Ind. 472; *Riggs* v. *Riley*, 113 Ind. 208; *Law* v. *Smith*, 4 Ind. 56; *O'Donahue* v. *Creager*, 117 Ind. 372; *Bell* v. *Longworth*, 6 Ind. 273. It is true that the conveyance to two of the testatrix's remote grantors named different lands than those here in controversy, and that their reformation is not asked for in this action; but the deeds and the possession under them characterized the possession as one that was hostile to all the world, and which in time would ripen into a title. But if it were conceded that the title of the testatrix was not a good title it would not help the appellant in this case; the testatrix was the common source of title. It was the foundation of the appellant's title under which he went into possession.

It is well settled that where the parties claim through a common source of title it is *prima facie* sufficient to prove the derivation of title from the common grantor, without

proving his title.   2 Greenl. Ev., section 307; *Cronin* v. *Gore*, 38 Mich. 381; *Miller* v. *Hardin*, 64 Mo. 545; *Spect* v. *Gregg*, 51 Cal. 198; *Hartshorn* v. *Dawson*, 79 Ill. 108; *Charles* v. *Patch*, 87 Mo. 450.

The claim of title made by the appellant under the sale for taxes is unavailing.   It is well settled law in this State that one who makes claim of ownership to real estate under a sale for delinquent taxes, must establish affirmatively that all the requirements of the law, from the listing of the property to the execution of the deed, were strictly complied with.   This the appellant failed to do; he introduced no evidence except his deed.   *Steeple* v. *Downing*, 60 Ind. 478; *Millikan* v. *Patterson*, 91 Ind. 515; *Haynes* v. *Cox*, 118 Ind. 184; *Kraus* v. *Montgomery*, 114 Ind. 103.   This is not an. action for possession, and, therefore, the five years' period of limitation which the appellant insists upon does not apply.   *English* v. *Powell*, 119 Ind. 93; *Farrar* v. *Clark*, 85 Ind. 449; *Bowen* v. *Striker*, 87 Ind. 317; *Gabe* v. *Root*, 93 Ind. 256.

We do not care to set out the antenuptial agreement between Catherine Murphy, the testatrix, and Alexander B. Murphy, who afterwards became her husband.   It is sufficient to say that the agreement was based upon a valuable consideration, and that by its terms each party thereto deprived himself and herself of all rights under the law, as widower or widow, in the property of the other; and that such was the intention of the parties there can be no question.   See *McNutt* v. *McNutt*, 116 Ind. 545.

If the contention of the appellant is correct, then the antenuptial agreement served no useful purpose whatever. But under the will of the testatrix the husband was given a life-estate in the whole of the real estate, and there is nothing in the record to show that down to the date of his death he ever set up any claim to the real estate, other than as provided in the will; and this being so, we must conclude

that he accepted the provisions of the will; and if he was content therewith, no one else could interpose in his behalf.

The complaint and the cross-complaint of Florinda Smaltz made Henry H. Fisher a party defendant; he made default, and the court found that he had no interest in the real estate in controversy, and that the appellant and the appellees were the owners thereof and tenants in common, each owning an undivided one-third.   Counsel for the appellant insist that this was reversible error.   Henry H. Fisher is not here com-plaining, and is concluded by the judgment.   We can not see, therefore, how the appellant is prejudiced by this action of the court, as it has the effect to increase his interest in the estate, and in the rents and profits for which he is adjudged to account.

But, if we are wrong in our conclusion, it will work no prejudice to the appellant, as the question is not presented in the record for our consideration.

The next, and most important question for our consideration is, Did the appellees acquire title to the real estate by the will of Catherine Murphy ?

The will reads as follows:

" I, Catherine A. Murphy, do make and publish this my last will and testament.

" I give and devise to my beloved husband, A. B. Murphy, my farm, on which we now live, situated in Carroll county, State of Indiana, containing eighty acres, during his natural life, and all my personal property, and household goods, in fee, to dispose of as he may see fit, except one bed and bedding, to my sister Leah Durany, said bed containing one straw tick, feather-bed, two quilts, two pillows, one sheet and a bolster-case, one coverlid; and I devise to John Franklin Fisher one bed, said bed to contain one straw tick, one feather-bed, one quilt, and two coverlids, one blanket, one comfort, two pillows; and, also, to said John Fisher, one bay horse about six years old last spring.   My beloved husband is to pay all my just debts out of my personal property, and after

the death of my beloved husband, it is my will that the farm shall be sold and the proceeds to be divided equally between my sister Leah Durany, and John Franklin Fisher, and my sister Florinda Smaltz, except two hundred dollars, which I devise to Henry Hetrick Fisher. It is my will that the money which may come to Leah Durany by the sale of my place shall be put in the hands of a guardian, and the interest and principal to be paid to her as she stands in need of it. If the said Leah Durany should die before she uses all the money, it is my will that what is left after her death be equally divided between Jonathan Franklin Fisher and Florinda Smaltz. It is my will, if my husband should marry again, that all his interest in said farm should cease. It is my will that my husband is to pay all the taxes, and to keep them paid, and to keep the farm in good order."

It will be observed that this will, like many others, is inartistically drawn, and that it is the handiwork of some person who was not familiar with such instruments, nor with the rules of law by which they are governed. And, although the testatrix provides that at the death of her husband her real estate shall be sold and the proceeds thereof divided between certain devisees named, she nominates no one as executor to execute the will, and the manner of making the sale, and by whom, is left unprovided for.

In construing wills the courts have made a distinction between a devise to the executor of real estate, with directions to sell the same and make distribution of the proceeds, and a devise which directs that real estate be sold and the proceeds distributed, but without passing the legal title to the executor.

In the one case it is held that the executor is the custodian of the title until divested by the sale, while in the other the title is held to be in the beneficiary or the heir until the sale is made. 3 Jarman Wills (5th Am. ed.), 36, note ; *Brumfield* v. *Drook,* 101 Ind. 190 ; *Simonds* v. *Harris,* 92 Ind.

505; *Thompson* v. *Schenck*, 16 Ind. 194; *Wilson* v. *Rudd*, 19 Ind. 101.

In the present case it appears from the record that the testatrix had no living children, but that some of the devisees or legatees were her sisters and heirs at law. She had provided for her husband.

As the will made no provision for an executor or as to the manner in which the sale should be made, and authorized no one to make it, the question arises, why might not the beneficiaries make it and execute to the purchaser a conveyance and divide the proceeds as the will directed?

This would carry out the intention of the testatrix, and we can imagine no one who under the circumstances would have a superior right to execute the will in this particular. Had that course been pursued, who could complain or contest the title of the purchaser? We can imagine no ground upon which such a contest could be successfully made, and if none, the purchaser's title would be secure because derived from those who held the estate.

Had a sale of the real estate occurred by the terms of the will, the devisees who were to receive the proceeds would have had an absolute right to the proceeds; now, if they preferred to keep the land, why might they not do so? If they would have been the absolute owners of the proceeds when converted into money, are they not the absolute owners of the real estate until converted, and if they are not, who is? Who but themselves are interested as to whether the land is kept intact or sold and the proceeds divided? The answer must be, no one. Fortunately the question is not barren of authority.

In 1854 Samuel Dunshee died in the State of New York the owner of certain real estate, and left a will containing the following provisions:

" '3. I give and bequeath to my beloved wife, Sophia V., one full third of the neat income of my said estate, and also,

the use and occupancy of all my household furniture during her widowhood.

" ' 4. I direct my said executors to let or lease out all my real estate to the best advantage, keeping the buildings insured and in good tenantable order during her widowhood; but in case I survive her, then it is my wish and will that my executors, after my demise, shall dispose of all my estate, both real and personal, either at public or private sale, at such time as they may think most advantageous, within six months after my demise giving good clean executors' deeds for the real estate. '

" 5. The testator gave sundry benevolent legacies.

" 6. A legacy to his granddaughter.

" 7. This clause provided that certain debts due the testator from his sons, John and William K., should be added to his estate and set off to them respectively as part of their portions of the estate, ' as I wish all my children to share and share alike. My executors, or the survivor of them, will thus distribute my estate equally to my four sons, namely, John, William K., James and Henry W. Dunshee.' * * *

" The questions submitted to the court upon this case were as follows:

" 1. Did the fee of the premises pass under the will of Samuel Dunshee to his executors—to his four sons living at the time of his decease—or to his heirs at law? * * *

" By the court, SUTHERLAND, J.: Notwithstanding the devise and bequest, in words, by the second clause of the will of Samuel Dunshee to his executors and executrix, all of his estate, real and personal, his real estate, on his death, vested in his four sons, John, William K., James, and Henry W., subject to the gift, by the third clause, to his wife, of one-third of the income of his estate during her widowhood, and this gift, as to his real estate, was, in substance and effect, a devise of one-third of his real estate to her during her widowhood.

" The power of sale given to the executors by the fourth clause of the will, must be viewed as a power in trust merely.

" It is not only contingent upon the event of the testator surviving his wife (which he did not), but its exercise is also limited to six months after the decease of the testator. · Had the testator survived his wife, his executors having failed to exercise the power of sale within the time limited by the testator, I do not see how they could effectively exercise it after that period." *Dunshee* v. *Goldbacher*, 8 Abbott's Prac. Rep. (N. S.) 439. *Brumfield* v. *Drook*, *supra*.

In the case of *Wilson* v. *Rudd*, *supra*, which was an action to enjoin a sale on execution of real estate, the learned judge who delivered the opinion said : " The facts alleged are as follows; In February, 1858, John Wilson, Sr., died, leaving a widow, five children, and seven grandchildren. At his death he left a will, which contained these provisions : 2. I give and bequeath to my wife, Jane Wilson, two beds and bedding, to be selected by her, twenty-five dollars a year as long as she lives, and a good, comfortable support during her life ; also, the use, during life, of the house we now occupy, together with the furniture and other articles necessary to keep house.

" 3. I give and bequeath to my grandchildren, Desdemonia Ferguson, Nancy Cassel, Betsey Clark, John Clark, and Catherine Clark, one hundred dollars each.

" 4. After the payment of all legacies, etc., I give and bequeath to my children, James Wilson, Serah Terhune, John Wilson, Jr., William Wilson, and Richard Wilson, and my grandchildren, Jordan Hunt and James Hunt, and their survivors, all my estate, both real and personal, to be divided among them, said grandchildren to take jointly one-sixth thereof.

" 5. If my wife dies before me, or, surviving me, does not accept the provisions of this will, then I direct that all my real estate be sold, by my executor, at public or private sale, as he may think best : if at public sale, for not less than

two-thirds of the appraised value thereof; if at private sale, at the full appraised value, etc.

"6. If my wife survives me, and accepts of the provisions of this will, then I direct that none of the legacies, except the provisions for her, be paid until her death. Immediately after her death, I direct that my real estate be sold as provided for in item 5 of this will ; the special legacies to be first paid out of the proceeds of such sale, and, after the payment thereof, the balance of such proceeds, and all my personal estate, to be distributed among my children and grandchildren, as directed in item 4 of this will.   *   *

" It is, however, insisted that, under the will, John Wilson, Jr., has really no interest in the land levied on, but a mere expectancy to share its proceeds when sold by the executor. We are not inclined to adopt that conclusion. By the *fourth* and *sixth* clauses in the will, the *legal title to the lands vested, directly, in the testator's children and grandchildren.* Nor does the provision in the will which directs the sale of the lands, after the death of the widow, and the distribution of the proceeds, at all conflict with the position that the devisees hold a vested interest. *Rumsey* v. *Durham,* 5 Ind. 71, is precisely in point. 'In that case, a testator, by his will, gave to his wife, as long as she should remain his widow, the use, etc., of all his real and personal property, for the support of herself and family.' The will then proceeded as follows : ' After the death or marriage of my wife, my will is, that all my property, real as well as personal, shall be sold, and be equally divided among my children.' ' *Held,* that the property vested in the children at the decease of the testator.' This decision, when applied to the case at bar, at once shows that, in the real estate devised by the will, John Wilson, Jr., had a vested interest, and, consequently, a leviable interest, which may be sold on execution."

We have examined the case of *Rumsey* v. *Durham, supra.* It is held in that case that as the executor was directed to sell the property after the death of the widow, this was

a conversion of the land into money, and that equity would so treat it; but whether personalty or realty can make no difference, if the estate, whatever it was, vested at the death of the testator in the devisees, or legatees.

In *Simonds* v. *Harris, supra,* it was held that where a will devised lands for life to the testator's wife, and at her death that the same be sold and the proceeds divided equally among his four children, after the death of the testator, but during the life of the widow, the children held a vested interest in the land, which was subject to attachment by their creditors, and that an attaching creditor could acquire such an interest as to entitle him to distribution in the proceeds of the estate when the land should be sold.

It is well settled that a devise of the rents and profits of land is equivalent to a devise of the land itself, and will carry the legal as well as the beneficial interest therein. *Thompson* v. *Schenck, supra; Stewart* v. *Garnett,* 2 Simons (English Chan.), 398; 2 Redfield Wills, 329; *Gulick* v. *Gulick,* 25 N. J. Eq. 324. And the rule is the same where the devise is of the income. *Mannox* v. *Greenor,* 14 L. R. S. Equity Cases, 456; *Thompson* v. *Schenck, supra;* Redfield Wills, *supra; Commons* v. *Commons,* 115 Ind. 162; *Roy* v. *Rowe,* 90 Ind. 54.

We are of the opinion, therefore, that the appellees had such interest or ownership in the real estate involved in this action as to enable them to maintain partition, and that they were tenants in common with the appellant.

In a partition suit the equities as between the common owners may always be adjusted. In this case it appears by the record that the appellant has been in the exclusive possession of the real estate in controversy for years, and that he has at all times disputed the rights of the appellees and denied their claim; he is, therefore, not only chargeable with the rents which he has received from third persons, but is bound to account for his own use and occupation. *Carver* v.

*Fennimore,* 116 Ind. 236. As this case fully cites the authorities, we call attention to the citations therein given.

We have examined the adjustment of accounts as made between the parties, and find that the appellant has no reason to complain of the result reached.

We find no error in the record.

Judgment affirmed, with costs.

Filed Nov. 1, 1889; petition for a rehearing overruled Dec. 17, 1889.