CHICAGO AND ERIE RAILROAD COMPANY v. FEIGHT-
NER, ADMINISTRATOR.

[No. 9,056. Filed December 22, 1916. Rehearing denied Decem-.
ber 26, 1916. Petition to transfer dismissed August 16, 1917.]

1. APPEAL.—*Review.*—*Sufficiency of Complaint.*—*Theory.*—In an
action for the death of a servant, where the complaint was
treated in the trial court by the parties and the court as predi-
cated on the federal Employers' Liability Act (Act April 22,
1908, ch. 149, 35 Stat. at L. 65, as amended by Act April 5,
1910, ch. 143, 36 Stat. at L. 291 [§§8657-8665 U. S. Comp. Stat.
1913]), the court on appeal will treat it likewise in determining
whether error was committed by the trial court in overruling
the demurrer thereto. p. 679.

2. COMMERCE.—*Federal Employers' Liability Act.*—*Scope and
Applicability.*—*Injuries in Interstate Commerce.*—In an action
against a railroad company under the federal Employers' Lia-
bility Act for injuries to a servant, recovery can be had only
where the injury is suffered while the carrier is engaged in
interstate commerce, and while the employe is engaged in such
commerce. p. 681.

3. COMMERCE.—*Railroads.*—*Federal Employers' Liability Act.*—
*Injury in Interstate Commerce.*—Where a local freight train
operating between two cities within the state was composed in
part of cars containing interstate freight, a brakeman on such
train who was injured when he, the engineer, fireman, and a
foreman were switching cars on a side track, was injured
while engaged·in interstate commerce within the terms of the
federal Employers' Liability Act. p. 682.

4. MASTER AND SERVANT.—*Injuries to Servant.*—*Assumption of
Risk.*—A brakeman on a freight train, who was inexperienced
in railroading and had·been employed but a few days, all of
which was known to the railroad company, and who did not
see or know of the proximity of a car on a passing track to
the entrance of another track, so that he was struck by such
car while riding on another car being moved by an engine and
fell under the wheels, did not assume the risk of injury, where
at the time of the accident he was working in obedience to
orders of his foreman and was without warning of the danger.
p. 685.

5. MASTER AND SERVANT.— *Injuries to Servant.*— *Proximate
Cause.*—*Complaint.*—*Sufficiency.*—Where a railroad brakeman
was injured while switching cars by being struck by a car which
had been left on another track in close proximity to the track
on which the brakeman rode, *held*, in an action for the brake-

man's death, that the averments of the complaint sufficiently showed that the negligence of the engineer and foreman, whose orders decedent was obeying at the time, was the proximate cause of the injury. p. 685.

6.  COMMERCE.— *Interstate Commerce.— Freight Cars.*— Empty freight cars have an interstate character while having an interstate movement, but, such movement ceases when they reach the first distributing point in the state of their destination. p. 687.

7.  MASTER AND SERVANT.—*Injuries to Servant.—Federal Employers' Liability Act.—Injury in Interstate Commerce.—Evidence.—Sufficiency.*—In an action to recover for the death of a freight brakeman under the federal Employers' Liability Act, evidence *held* insufficient to show that decedent was injured while engaged in interstate commerce within the meaning of the act. p. 688.

From Wells Circuit Court; *W. H. Eichhorn,* Judge.

Action by Patrick M. McCarty, administrator of the estate of Emanuel N. Wolfe, deceased, against the Chicago and Erie Railroad Company. From a judgment for plaintiff, the defendant appeals. Milo Feightner, administrator *de bonis non* was substituted as appellee on the death of McCarty. *Reversed.*

*E. C. Vaughn, W. O. Johnson* and *Walter M. Johnson,* for appellant.

*Bowers & Feightner* and *Sturgis & Stone,* for appellee.

HOTTEL, J.—This is an appeal from a judgment recovered by Patrick M. McCarty, administrator of the estate of Emanuel N. Wolfe, deceased, to recover damages for the death of said Wolfe, alleged to have been caused by appellant's negligence. Since the submission of the cause, the death of said McCarty has been suggested and Milo Feightner, administrator *de bonis non,* substituted as appellee.

A demurrer to the complaint for want of facts and a motion for new trial filed by appellant were each overruled. These rulings are each assigned as error and

relied on for reversal. We will dispose of them in the order indicated.

In the trial court, the complaint was treated by the parties and by such court, as predicated on the federal Employers' Liability Act of April 22, 1908, as amended by the act of April 5, 1910, and hence, this court will likewise so treat it in determining whether error was committed by the trial court in over-ruling the demurrer thereto. *Zeller, etc., Co.* v. *Vinardi* (1908), 42 Ind. App. 232, 85 N. E. 378; *Oolitic Stone Co.* v. *Ridge* (1908), 169 Ind. 639, 83 N. E. 246; *Euler* v. *Euler* (1913), 55 Ind. App. 547, 102 N. E. 856, and cases there cited.

It is urged against the complaint that the facts plead-ed do not show: (1) Liability under said act; (2) that such facts do not show that either appellant or decedent was engaged in interstate commerce at the time decedent received his injury; (3) that the facts pleaded show that decedent assumed the risk which resulted in his death; (4) that the facts pleaded do not show that de-cedent's death was the proximate result of any viola-tion of duty on the part of appellant.

As affecting these and other questions presented by the appeal, substantially the following facts are alleged in the complaint: Appellant is a railroad corporation and owns and operates a line of railway from Chicago, Illinois, through the State of Indiana, and other states, which is used by it in carrying on interstate commerce. Decedent was employed by appellant as freight brake-man and on January 4, 1913, *was employed on a freight train which on said day was carrying freight from Chi-cago, Illinois, to Hammond, Indiana, and from and to points along defendant's line of railway eastward, and was engaged in transporting freight from and to points along appellant's road through Indiana, and also freight to be delivered at points in Ohio and other places beyond*

*such state.* Such line of railway extends through Crown Point, Indiana, and at such point appellant owns and uses three parallel tracks, namely, a main track, a track immediately north thereof, known as a passing track, and another track immediately north of the latter used for loading freight, known as the back track. A switch leads off the main line to the passing track, and another switch off the passing track to the back track. On the day in question decedent was on an east bound freight train which started at Hammond, Indiana. When the train reached Crown Point, the locomotive was detached from the train, and in charge of the engineer and fireman, and decedent and a foreman, proceeded to change two cars on the back track above described. The divers movements of the locomotive necessary to make this change are alleged in detail. The two cars were pulled out on the passing track and the rear car was left standing thereon at a point near the entrance to the back track, while the car next to the locomotive was being relocated on the back track. Decedent climbed on the car that was being relocated on the south side at the end next to the locomotive, and pursuant to orders and directions which he was bound to obey, proceeded to uncouple said car from the locomotive. The car on the passing track had been left standing at a point so close to the entrance to such back track that there was but a twelve-inch passing space between the two cars. Decedent was inexperienced in railroading and had worked as a freight brakeman but a few days, which was known to appellant. While decedent was uncoupling said car as it was moving backward, and with his mind absorbed in such act, he was struck by the car left on the passing track and thrown under the wheels of the tender and locomotive and injured so that he died a few minutes thereafter. Decedent did not know of the close proximity of the car

on the passing track, to the entrance to the back track, and he had no warning of the danger he was about to encounter while attempting to ride the other car back into the back track. The engineer who had charge of the locomotive, and the foreman who was giving directions as to the placing of said cars, both knew of the proximity of the car on the passing track to the back track, and of the danger and peril that decedent was in, in passing said car, before decedent was injured. Decedent was engaged in coupling and uncoupling said cars while locating them, and his attention was directed upon said duties and he relied on the foreman and engineer to place the cars at such places as would not injure him.

In support of its first two propositions, *supra,* it is insisted by appellant that the facts pleaded show that decedent, when injured, was engaged in setting and handling cars taken off of appellant's side tracks at Crown Point, and that nothing appears from such averments showing that such cars were intended for interstate transportation, or that they contained any freight for such transportation, and hence that nothing appears from the complaint to show that decedent, at the time of his injury, was engaged in interstate commerce.

It may be and in fact must be conceded, as appellant contends, that recovery under the statute involved "arises only where the injury is suffered while

2. the carrier is engaged in interstate commerce, and while the employe is employed by the carrier in such commerce," and, at the time of his injury, such employe must be engaged in interstate commerce. *Hammill* v. *Pennsylvania R. Co.* (1915), 87 N. J. Law 388, 94 Atl. 313; Thornton, Federal Employers' Liability Act §40, and cases there cited; *Pedersen* v. *Delaware, etc., R. Co.* (1913), 229 U. S. 146, 150, 33 Sup. Ct. 648, 57 L. Ed. 1125, 1126, Ann. Cas. 1914C 153.

The averments of the complaint indicated, *supra,* show, that, while the train on which decedent was employed was being operated over an interstate

3.  road, it was a local train being operated between two cities in this state, and hence, was not, strictly speaking, an interstate train. The complaint, however, contains the further averments which we have italicized, *supra,* and which show that such train had in it cars loaded with interstate freight. These averments were sufficient to show that such train was transporting interstate commerce, and hence, that appellee's decedent was likewise engaged in assisting in the transportation of such commerce, at least while engaged on such train in the work of assisting in the transportation and handling of such train, or any of the cars thereof containing interstate freight. This is in effect, we think, conceded by appellant, but it is very earnestly insisted that when said engine was detached from said train and attached to the local cars on appellant's side tracks at Crown Point, that such engine was not then engaged in transporting interstate commerce, and hence, that decedent while assisting in such work was not so engaged. In support of its position, appellant relies on the following cases: *Tsmura* v. *Great Northern R. Co.* (1910), 58 Wash. 316, 108 Pac. 774; *Van Brimmer* v. *Texas, etc., R. Co.* (1911), 190 Fed. 324; *Second Employers' Liability Cases* (1912), 223 U. S. 1, 56 L. Ed. 327, 32 Sup. Ct. 169; *Seaboard Air Line* v. *Moore* (1913), 228 U. S. 433, 57 L. Ed. 907, 33 Sup. Ct. 580; *St. Louis, etc., Co.* v. *Seale* (1913), 229 U. S. 156, 57 L. Ed. 1129, 1133, 33 Sup. Ct. 651; *North Carolina R. Co.* v. *Zachary* (1914), 232 U. S. 248, 34 Sup. Ct. 305; *Grand Trunk R. Co.* v. *Lindsay* (1914), 233 U. S. 42, 34 Sup. Ct. 581.

While there are statements in some of these cases which lend apparent support to appellant's contention,

MAY TERM, 1921. 683

Chicago, etc., R. Co. *v.* Feightner, Admr.—75 Ind. App. 677.

such statements have been criticized by later decisions, and the facts of each of the other cases cited by appellant distinguish the respective case from the case made by the complaint in this case. *Horton* v. *Oregon-Washington, etc., Co.* (1913), 72 Wash. 503, 130 Pac. 897, 47 L. R. A. (N. S.) 8; *Shanks* v. *Delaware, etc., R. Co.* (1914), 163 App. Div. 565, 148 N. Y. Supp. 1034; *Pennsylvania Co.* v. *Donat* (1915), 239 U. S. 50, 36 Sup. Ct. 4, 60 L. Ed. 139; *Lamphere* v. *Oregon R., etc., Co.* (1912), 196 Fed. 336, 116 C. C. A. 156, 47 L. R. A. (N. S.) 1, and cases there cited; *Atlantic Coast Line R. Co.* v. *Jones* (1913), 9 Ala. App. 499, 63 South. 693; Thornton, Federal Employers' Liability Act §§ 45, 49; *Southern R. Co.* v. *Jacobs* (1914), 116 Va. 189, 81 S. E. 99; *Colasurdo* v. *Central R., etc.* (1910), (C. C.) 180 Fed. 832; *Behrens* v. *Illinois Cent. R. Co.* (1911), 192 Fed. 581; *Carr* v. *New York, etc., Co.* (1913), 157 App. Div. 941, Id., 142 N. Y. Supp. 1111; *New York, etc., Co.* v. *Carr* (1915), 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298.

One of the tests approved by the courts, which aid in determining whether the particular work at which the injured employe was engaged, at the time he received his injury, was work connected with interstate commerce and such as would bring the employe within the protection of said act, "is its effect on the course and current of interstate commerce. Was the employe's relation to traffic so close that his injury tended to stop or delay the movement of a train engaged in interstate commerce?" *Shanks* v. *Delaware, etc., R. Co., supra.*

In the case of *Graber* v. *Duluth, etc., R. Co.* (1915), 159 Wis. 414, 418, 150 N. W. 489, 491, the court said: "But, as indicated, if the particular act, in any substantial part, is within the interstate field, then the federal law rules the situation, if either party sees fit to stand upon legal right in the matter."

In the case of *Southern R. Co.* v. *Jacobs, supra,* the court said: "It is true that at the precise moment of the injury Jacobs, the man who was injured, was engaged with a crew in shifting cars in the yard at Lawrenceville, and the particular cars which were attached to the engine at the moment of the accident were engaged in intrastate, as contradistinguished from interstate, commerce, and did not come from any point beyond the limits of the State, and were destined to points within the State; but it is also true that the shifting and movement of the cars at the time had for its object the making up of a train to which the cars were to be attached which came from points beyond the southern limits of the State and were destined to points beyond the northern limits of the State, by way of Norfolk, and were laden with interstate shipments; and these facts, we think, bring the case fairly within the influence of *Pedersen* v. *Delaware, etc., R. Co., supra,* and the circuit court committed no error in so deciding."

Again in the case of *Lamphere* v. *Oregon R., etc., Co., supra,* the court said: "Was the relation of the employment of the deceased to interstate commerce such that the personal injury to him tended to delay or hinder the movement of a train engaged in interstate commerce? To that question we think there can be but one answer. Under the imperative command of his employer, the deceased was on his way to relieve, in the capacity of a fireman, the crew of a train which was carrying interstate commerce, and the effect of his death was to hinder and delay the movement of that train. In our opinion the complaint states a cause of action under the Employers' Liability Act."

Measured by these cases and the rules laid down therein, the complaint is not open to the first and second objections, *supra.*

As affecting appellant's third objection, it is sufficient to say that the complaint shows that appellee's decedent was inexperienced in railroading and that he had been employed as a freight brakeman but a few days, all of which was known to appellant; that he did not see or know of the proximity of the car on the passing track to the entrance of the back track; that when injured he was obeying the orders of his foreman, whose orders he was required to obey; and that he had no warning, etc.

These averments make the complaint sufficient as against the charge that it shows that decedent assumed the risk of the injury which resulted in his death. *Mondou* v. *New York, etc., R. Co.* (1912)., 223 U. S. 3, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; *Indianapolis Traction, etc., Co.* v. *Holtsclaw* (1907), 41 Ind. App. 520, 82 N. E. 986; *Texas, etc., R. Co.* v. *Swearingen* (1904), 196 U. S. 51, 25 Sup. Ct. 164, 49 L. Ed. 382; *Choctaw, etc., R. Co.* v. *McDade* (1903), 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; *Baltimore, etc., R. Co.* v. *Roberts* (1903), 161 Ind. 1, 67 N. E. 530.

It also sufficiently appears from the averments of the complaint which we have indicated, *supra,* that the negligence of the appellant's employes, the engineer and foreman, whose orders decedent was obeying when injured, was the proximate cause of decedent's injury and death. *Illinois Central R. Co.* v. *Skaggs* (1916), 240 U. S. 66, 36 Sup. Ct. 249, 60 L. Ed. 528.

It follows that no error is presented by the ruling on the demurrer to the complaint.

In its discussion of the ruling on its motion for new trial, appellant challenges the sufficiency of the evidence to sustain the verdict. It is insisted that there is a total failure of evidence to support each of several of the essential averments of the complaint, among which,

686    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. *v.* Feightner, Admr.—75 Ind. App. 677.

is the averment that appellant and decedent, at the time he received the injury which resulted in his death, were engaged in interstate commerce.

As before indicated, the facts pleaded show that the train on which decedent was employed was a local train being operated between Hammond and Rochester, and that the averments which made the complaint sufficient were those which showed that such train contained cars loaded with interstate freight. The undisputed evidence supports said averment that the train in question was a local freight, run between Hammond, Indiana and Crown Point, Indiana, but we find no evidence from which the jury were authorized in finding that such train *contained any interstate cars or any car loaded with interstate freight.* Appellee, in his brief, indicates that there was such evidence, but we have read the record with care and failed to find it. The nearest approach to such proof is the testimony of Joseph Schearer, the engineer, whose testimony affecting this question is as follows: "Q. Where did you get your way freight, from Mr. Schearer, or had you gotten your way freight that you had in your train that day?" "A. *I don't know where that comes from,* that is loaded at the freight houses." "Q. Didn't you get some of it from Chicago?" "A. I don't know." "Q. Did you have any other train that was called the Chicago way-train?" "A. I don't know." "Q. Mr. Schearer, did you not give your examination to this matter in the City of Hammond some time ago?" "A. Yes, sir." "Q. I will ask you if this question was not propounded to you at that time and your answer: 'Q. Where had this freight come from that you were pulling that day, the best of your impression?' And whether you did not answer this way: 'A. Well the way freight comes' —*we have a Chicago way car and Hammond way car, and of course there is perhaps freight in the Chicago*

*way car from away west of Chicago.'*" "A. Yes, sir." "Q. I will ask you whether or not on that day you were pulling freight from Chicago, Illinois?" "A. I *suppose* we were." (Our italics.) Here, the record contains the following: "Plaintiff moved the court to strike out the answer of the preceding question. Which motion the court sustained." "Q. Do you know whether or not you were pulling freight that day from Chicago, Illinois?" "A. *We were probably pulling the cars but I don't know whether there was any freight from Chicago.*" (Our italics.)

The most that this evidence can be said to show is that they were *probably* pulling cars that had come from Chicago to Hammond.

While the cars, if empty, may have had an interstate character, this would be true only while they had an interstate movement, and such interstate movement ceases when they reach the first distributing point in the state of their destination. *Louisville, etc., R. Co.* v. *Strange's Admx.* (1913), 156 Ky. 439, 161 S. W. 239; *Pennsylvania R. Co.* v. *Knox* (1915), 218 Fed. 748, 134 C. C. A. 426; Thornton, Federal Employers' Liability Act (3rd. ed.) p. 52, §32.

So far as the evidence *supra* shows, any empty cars which may have come from Chicago may have been sent to Hammond as a distributing point, and hence, at such point lost any interstate character that they may have had in the train which brought them to Hammond. There is nothing in the evidence showing that the movement of said cars when taken into the train in question was interstate, or that their destination was any point east of or beyond Rochester, the destination of the train into which they were taken, nor is there any evidence to show that any car in said train contained interstate freight.

It follows that there is no evidence from which the

jury were authorized in finding that decedent, when he received the injury resulting in his death, was en-
7.   gaged in interstate commerce within the meaning of the section of the federal statute *supra*, on which his action is predicated.

Other rulings of the court are presented by appellant's motion for new trial, but the conclusion which we have reached makes it unnecessary to consider or determine them.

For the reasons indicated, the judgment below is reversed, with instructions to the trial court to sustain appellant's motion for new trial and for such further proceedings as may be consistent with this opinion.