## WELCH v. CAPITAL PAPER COMPANY ET AL.

### [No. 10,957.    Filed October 12, 1921.]

1. JUDGMENT.—*Appointment of Receiver.—Collateral Attack.*— The court's determination in a receivership proceedings, as to the insolvency of the business for which the receiver is appointed, is conclusive on collateral attack as to the insolvency of such business in an action by one of the proprietors against his partner and another for damages by reason of the conduct of defendants in producing a condition of apparent insolvency of solvent business. p. 420.

2. JUDGMENT.—*Conclusiveness.—Fraud.*—Even though a judgment is procured by fraud, it cannot be treated as a nullity, but it is conclusive upon the parties until set aside on appeal, or vacated. p. 421.

3. APPEAL.—*Review.—Theory of Lease.*—The court on appeal will treat a pleading upon the same theory as that of the trial court. p. 421.

From Marion Superior Court (A6,312) ; *Vincent G. Clifford,* Judge.

Action by Robert L. Welch against the Capital Paper Company and another. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*George W. Galvin* and *Hottel & Patrick,* for appellant.

*Albert Asche,* for appellees.

NICHOLS, P. J.—Appellant relies for a reversal of the judgment herein upon error of the court in sustaining appellees' joint and separate demurrer to appellant's complaint, the substance of which is as follows:

About December 10, 1918, appellee company sold and transferred to appellant and appellee Kaser a stock of goods and personal property in the premises known as 306 North Capitol avenue, Indianapolis, for which they agreed to pay $1,964.64, payable $100 per month after the day of sale, the said Kaser, unknown to appellant, being at the time a creature of and in the pay of said

company, and being used in said deal for its undisclosed purposes. After the execution of the bill of sale they were placed in possession of said personal property with the express understanding and agreement that said Kaser should control, direct and manipulate the purchase and sale of all automobile accessories while appellant should attend to the mechanical, vulcanizing, scientific and promoting part of said business, such arrangement being purposely and intentionally made by said company with a view and for the wrongful purpose of employing appellant and procuring and securing his skill, knowledge and ability without recompense. Afterwards on the —— day of March, 1919, appellant and said Kaser, leased the premises known as 306 North Capitol avenue, and became the leasehold owners of the property as tenants in common. Said lease was procured and obtained by appellant in good faith but without the knowledge of said company. After said December 10, 1918, appellant and Kaser paid to said company $100 per month upon the said indebtedness as had been agreed by them, and were at no time in default, and said sums were paid by appellant in good faith and under the belief that said company was dealing honestly and in utter fairness with appellant. Within a period of sixty days, the said company realized the business ability, knowledge and experience of appellant was of great value in said business and came to understand and realize that said business had taken upon itself a value greatly in excess of the value of the goods sold by it to said Kaser and appellant, and that a good will of great value was being rapidly created by the skill, integrity and energy of appellant. Immediately thereupon the said company wrongfully and without right and with a view to injuring, annoying and destroying the business of appellant, began to in-

trigue and conspire with said Kaser and hold out inducements to him to interfere with the progress of the business, and commanded and directed him as its employe, and so influenced the said Kaser as to induce him to neglect said business and to interfere with the work of appellant and to endeavor to destroy the value of the good will of the said business which had been created wholly and solely by the efforts of appellant. Said company induced, procured. and compelled the said Kaser to purchase of it on the credit of said Kaser and appellant obsolete and worthless accessories of little value and to add to the stock unnecessary and unneeded articles, and so induced, persuaded and compelled said Kaser to incur a wholly unnecessary and improvident indebtedness to it of about $900. Said Kaser by the procurement of said company at the time pretending to appellant that the goods were on commission or upon indefinite credit and not a lien upon or embarrassing to said business. Said company did on the —— day of May, 1918, without any cause whatever, induce and procure the said Kaser, pursuant to their conspiracy to destroy appellant's interest in said business, to desert the said business and abandon it, thereby creating an apparent condition of insolvency when in fact the business was solvent and of great value. Thereupon said company, by and with the consent of said Kaser, filed its petition in the circuit court of Marion county, Indiana, asking for a receiver to take charge of said business, falsely and fraudulently alleging among other things the conditions it and its coconspirator had created, alleging and charging maliciously and untruthfully that said business was insolvent, that said company was liable to loss from misconduct of said business, and that said business owed indebtedness, then due and payable, which it could not pay. Thereby, and by reason of such fraudulent and untruthful allegations,

all of which it knew to be false and fraudulent, and the conspiracy entered into with said Kaser, it obtained the appointment of a receiver for said business, and caused said court to appoint the Fidelity Trust Company as receiver of said business, it at the time well knowing that such business was a valuable and going business, and having in view solely the purpose and object of obtaining the same to the damage of appellant. Said company, by itself and by and through its attorney, in violation of law intrigued with and influenced such receiver and caused and procured said receiver to apply for an order of sale, procuring an order of sale to be entered in violation of the prayer of the petition and without the knowledge of appellant or his attorney, and with the purpose and intent of defrauding and wronging appellant, and by itself and through its attorney interfered with the work of said receiver to make a garbled and incorrect appraisement of the property of said trust, and changed, altered and manipulated said appraisement, and without notice to him or his attorney, procured and obtained an order for the sale of the property of appellant embraced in said receivership in bulk, and so directed and procured the sale of the same as to minimize the price of said property, and to prevent the same from being sold at its fair cash value, and wholly to prevent the sale of the good will of said business and its "going" value, which was fully of the value of $5,000 and directed and controlled the action of such receivership in direct violation of law to the end and purpose of destroying the valuable interests of appellant in the goods and business aforesaid, and the good will thereof and the leasehold interests, and wholly for the purpose and with the unlawful intent of destroying his business, driving him therefrom, and procuring the leasehold interests, the good will and the prestige of location for itself and coappellee, which it

has now done and is in the possession of said business under processes of such receivership with its coconspirator, Kaser; that by reason of the conspiracy so as aforesaid made and carried out appellant was wrongfully and unlawfully deprived of his business, business interests, and trade of great value, to wit, of the value of $5,000, put to great loss of time, and his business credit greatly impaired, all of which to his damage in the sum of $5,000. Wherefore appellant demands judgment for $5,000.

Appellant says in his brief that he had not, and does not now, either directly or collaterally attack the judgment or proceedings in the receivership case, be-

1. cause he recognizes that a state of insolvency existed. We are wholly unable to harmonize this statement with the averments in the complaint that appellees by their course had produced a condition of apparent insolvency when in fact the business was solvent and of great value, and that appellees had filed a petition for a receiver, alleging and charging maliciously and untruthfully that said business was insolvent, and that they minimized the price of the property, and prevented it from being sold at its "going" value, which was fully $5,000. Recognizing the force of these averments, appellant says that there are allegations in the complaint that may be possibly susceptible to the construction that an attack upon the judgment and receivership proceedings is intended, but that he disavows any such purpose. We are, however, considering a complaint on demurrer that contains the averments aforesaid, and by them we must be controlled, rather than by appellant's present disavowals on appeal. In order to escape the force of such plain averments, appellant should have eliminated them from his complaint before the ruling on demurrer. As we interpret the complaint, it charges that appellees by their course of

conduct had produced a condition of apparent insolvency of a solvent business, and then by their petition for a receiver presented the question of solvency or insolvency to the court for trial. In order to make the appointment of a receiver, the court must determine the question against appellant, which it did. The order appointing a receiver, the order of the sale of the property, and the report of the sale were unappealed from, and wholly unchallenged. The question of the insolvency of the business having been once adjudicated by a competent tribunal, the judgment is conclusive and cannot be collaterally attacked as in this case. *Indianapolis, etc., R. Co.* v. *Center Twp.* (1891), 130 Ind. 89, 28 N. E. 439; *Davis* v. *Taylor* (1895), 140 Ind. 439, 39 N. E. 551; *Gutheil* v. *Goodrich* (1903), 160 Ind. 92, 66 N. E. 446; 2 Burns, Indiana Digest 1743.

Even if the judgment had been procured by fraud, it cannot be treated as a nullity, but it is conclusive upon the parties until set aside on appeal, or vacated.

2. So long as it stands it concludes the parties upon the matters therein determined. *Emerick* v. *Miller* (1902), 159 Ind. 317, 64 N. E. 28; *State* v. *Hindman* (1903), 159 Ind. 586, 65 N. E. 911; *Oster* v. *Broe* (1902), 161 Ind. 113, 64 N. E. 918; *Stone* v. *Elliott* (1914), 182 Ind. 454, 106 N. E. 710.

Appellant says that "appellees regard the action as a collateral attack upon the judgment and proceedings in the receivership case, and as being in a sense

3. foreclosed by the rule of *res adjudicata,* and that this, no doubt, is the view held by the trial court in sustaining the demurrer." In the case of *Chicago, etc., R. Co.* v. *Feightner* (1916), 75 Ind. App. 677, 114 N. E. 659, in an able opinion written by Hottel, J., the rule is reaffirmed that courts upon appeal will treat the pleading upon the same theory as that of the trial court. Numerous authorities are cited. See also, *Evansville,*

*etc., R. Co.* v. *Scott* (1916), 67 Ind. App. 121, 114 N. E. 649. Following the rule in this case, we have no hesitancy in holding that the court did not err in sustaining the demurrer to the complaint. Judgment affirmed.