COOPER ET AL. *v.* TARPLEY ET AL.

[No. 16,659. Filed May 8, 1942. Rehearing denied June 17, 1942.]

*Cooper, Royse, Gambill & Crawford,* of Terre Haute, and *Embree & Hall,* of Princeton, for appellants.

*Sanford Trippet* and *Arthur S. Wilson,* both of Princeton, and *Kearn, Pearce & Pearce,* of Carmi, Illinois, for appellees.

FLANAGAN, J.—On February 21, 1871, Levi Fifer was the owner of the west half of the northwest quarter of fractional section 18, Township 3 South, Range 13 West, containing about 41 acres. The north boundary line of the above described real estate is the Wabash River.

The tract involved in this action is a part of the above described real estate and runs along the bank of the Wabash River a distance of 1,206 feet.

On September 9, 1892, and at all times since, a fence has been maintained along the south line and during a part of the time on the west line of the involved tract. The south line at the east end of the tract is 195.5 feet south of the river and at the west end is 148.3 feet south of the river.

On February 21, 1871, Levi Fifer sold to James Lewis a parcel of one acre having a frontage of 264 feet on the river beginning 346.5 feet west of the east line of the tract which we have described as fronting on the river a distance of 1,206 feet. This divided the tract into three parcels, the east 346.5 feet which we will hereafter refer to as tract A, the middle 264 feet which we will hereafter refer to as tract B, and the west 595.5 feet which we will hereafter refer to as tract C.

In the deed from Fifer to Lewis the real estate sought to be conveyed was by mistake described as being in the *southwest* quarter of fractional section 18, instead of the *northwest* quarter, and this mistake has been carried forward in practically all the deeds in the chain of title to tract B from that time to the present. Tract B changed hands several times between 1871 and September 9, 1892, when it was finally conveyed to Sarah A. Douglas, the erroneous description still being used.

In 1904 Sarah A. Lamar, the same person as Sarah A. Douglas, above referred to, conveyed to George P. Bowman, Edwin P. Bowman, Samuel P. Ronalds and Hugh L. Ronalds. On July 19, 1904, the two Ronalds conveyed their interests to the two Bowmans. In 1923 the heirs of George P. Bowman conveyed their interests to Edwin P. Bowman and Francis R. Bowman. In 1926, the Bowmans conveyed to George P. Bowman & Sons,

Inc., an Illinois corporation. In 1935, a receiver was appointed for the corporation; and in 1936, the receiver conveyed to appellees George J. Jolley and Thomas S. Jolley. In all of the above deeds, the real estate was described as being in the *southwest* quarter instead of the *northwest* quarter.

Appellants are now the record owners of tracts A and C by reason of a chain of title relating back to Levi Fifer.

This action was brought by appellants against appellees George J. Jolley, Thomas E. Jolley and a number of others to quiet title to tracts A, B, and C. Appellees Jolley and Jolley sought by cross-complaint to quiet their title to the same real estate.

The trial court found the facts specially, entered its conclusions of law and rendered judgment that title be quieted in appellants as to tract A and in appellees as to tracts B and C. On this appeal no question is being raised as to tracts A and B. The only question presented is as to tract C.

Appellants duly excepted to the conclusions of law and filed their motion for a new trial on the grounds that the decision is not sustained by sufficient evidence and is contrary to law. This motion was overruled.

Appellants here contend that the trial court erred in its conclusions of law and in overruling their motion for a new trial.

Under the specifications of their motion for a new trial, appellants point to certain facts which they contend are not supported by the evidence and are outside the issues and therefore contrary to law. The findings complained of are not in our opinion essential and may be disregarded. The facts as we have related them in tracing the record title, together with the following facts bearing upon the question of adverse possession,

are properly found by the court, are fully supported by the evidence and within the issues.

When Sarah A. Douglas, on September 9, 1892, bought tract B, a church known as "Shiloh Church" was located on tract A and remained there until it was either blown down or washed away by flood waters in 1913. Tract A was known as the Shiloh Church tract. On September 9, 1892, Sarah A. Douglas took possession of all the real estate west of the Shiloh Church tract which was inclosed by the fence. That included both tracts B and C.

She built her house and appurtenant buildings on tract C and proceeded to use tracts B and C as one parcel of real estate until she conveyed to the Bowmans and Ronalds in 1904. In the deed to them was the following reservation: "Use of the dwelling house on the above described land is hereby reserved for my personal use during my life time." Her possession was open, notorious and continuous.

Likewise when she conveyed to the Bowmans they took possession of tracts B and C treating them as one parcel. They were engaged in the grain business and used the entire parcel in their business. They built cribs, an elevator, a scale house and other buildings, some of which built in 1916 cost approximately $7,000. The corporation succeeded to the grain business at the time it received the conveyance of the real estate. The Bowmans, the corporation and the Jolleys were at all times, as they succeeded to the title to tract B, actually in open, notorious and exclusive possession of all of tracts B and C, treating them as one parcel and as though it was all contained within the descriptions in their respective deeds.

It should be noted that the above statement as to the recital contained in the deed from Sarah A. Lamar

to the Bowmans and Ronalds is not set forth in the special finding. However, it is undisputed in the evidence and the finding will be considered as properly amended here. *Colonial Fire Underwriters, etc.* v. *German* (1941), 108 Ind. App. 601, 31 N. E. (2d) 68.

Upon the above facts, could the trial court base a conclusion of law that appellees Jolley are the owners of tract C?

Appellants insist that neither appellees Jolley nor their predecessors in possession had any color of title to tract C.

It is not essential to the acquisition of title by adverse possessions that the entry should be under color of title. The absence of color of title only affects the extent of possession. The rights of those who enter upon lands without color of title are confined to that portion which is subjected to their actual possession. There can be no constructive possession. *Welch* v. *Capital Paper Co.* (1921), 76 Ind. App. 416, 132 N. E. 313; *Bowen* v. *Swander* (1889), 121 Ind. 164, 22 N. E. 725; *Roots* v. *Beck* (1887), 109 Ind. 472, 9 N. E. 698; *May* v. *Dobbins* (1906), 166 Ind. 331, 77 N. E. 353; *Swanson* v. *New York, etc., R. Co.* (1925), 83 Ind. App. 580, 149 N. E. 353.

In the instant case actual possession was taken of the entire tracts involved. No question as to constructive possession being presented under the facts, it is not material that appellees Jolley and their predecessors in possession lacked color of title. In order to establish title by adverse possession, the possession must be, (1) actual, (2) visible, (3) open and notorious, (4) exclusive, (5) under claim of ownership, (6) hostile, and (7) continuous for the statutory period of twenty years.

§ 2-602, Burns' 1933, § 61, Baldwin's 1934; *Philbin* v. *Carr* (1921), 75 Ind. App. 560, 129 N. E. 19; *Marengo, Cave Co.* v. *Ross* (1937), 212 Ind. 624, 10 N. E. (2d) 917.

Under the facts here it is clear that the possession was actual, visible, open and notorious, exclusive, under claim of ownership and hostile. It is not ▆▆ material if appellees Jolley and their predecessors in possession took possession of tract C under the mistaken impression that it was part of their real estate and therefore without purpose to possess lands of another. In this State, when an owner of land, by mistake as to the boundary line of his land, takes actual, visible and exclusive possession of another's land and holds it as his own continuously for the statutory period of twenty years, he thereby acquires the title as against the real owner. *Rennert* v. *Shirk* (1904), 163 Ind. 542, 72 N. E. 546; *Dyer* v. *Eldridge* (1894), 136 Ind. 654, 36 N. E. 522; *Stalcup* v. *Lingle* (1921), 76 Ind. App. 242, 131 N. E. 852.

The remaining question is whether the adverse possession was continuous.

It is settled that the statutory period of possession need not be maintained by one person. Successive periods of tenancy by different tenants may be ▆ tacked to constitute the necessary period for adverse possession to defeat the title of the record owner, if each of the successive tenants claimed to hold and was in possession, under his predecessor. *Doe* v. *Brown* (1853), 4 Ind. 143; *Stalcup* v. *Lingle, supra; McIntire* v. *Brown* (1867), 28 Ind. 347.

Appellants insist that privity of title which comes from transfer of title or assumed title by deed, by

law, or by descent is necessary for tacking successive periods of adverse possession. We do not so·understand the law. The requisite privity is privity of possession and denotes merely a succession of relationship to the same thing.

The applicable principles are stated as follows in 1 Am. Jur., Adverse Possession, § 151 to § 158, pp. 879 to 884:

"In order to come within the requirements as to continuity of possession, . . . it is not necessary that an adverse possession should be maintained for the statutory period by one person. Continuity may be just as effectively shown by the successive possessions of several persons between whom the requisite privity exists. This is called tacking.

. . .

"Privity denotes merely a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law. . . . All that is necessary to privity between successive occupants of property is that one receive his possession from the other by some act of such other or by operation of law, . . .

". . . Thus, where the owner of a tract of land occupied other property, adjacent thereto, by adverse possession, it is not material that in the sale of the whole, the land claimed by adverse possession is not described in the conveyance. . . .

. . .

"As the result of the doctrine, supported by many cases, that a transfer of the possession of property sufficient to create privity of possession between successive occupants may be made by parol or implied from circumstances, it is held that if, in connection with the conveyance of lands, there are circumstances showing an intent to transfer to the grantee the possession of other adjacent land occupied by the grantor, but not covered by the deed, there is created such a privity that the grantee is entitled to tack the period of the grantor's occupancy to his own in establishing title by adverse possession to the land not conveyed. Under these

circumstances, it is not the deed which creates privity, but the transfer of possession found from facts resting in parol.

"In several cases it has been held that where land adversely held is included in the same inclosure with land owned and conveyed by the grantor, the taking of possession by the grantee of the entire inclosed area creates a privity with the grantor as to the portion not conveyed. So, where a purchaser of land incloses and occupies a tract outside his boundaries, believing it to be included therein, and in that belief conveys to another by the same description, intending that the grantee shall take the whole inclosed area, his possession may be tacked to that of his grantee."

See also 2 C. J. S., § 130 to § 139, pp. 687 to 700; Annotation, 46 A. L. R. 792; *Rennert* v. *Shirk, supra; Stalcup* v. *Lingle, supra; Dyer* v. *Eldridge, supra; McAnally* v. *Texas Co.* (1934), 124 Tex. 196, 76 S. W. (2d) 997.

Applying the above principles to the facts in this case, it follows that there was such privity as to permit tacking and that appellees Jolley and their predecessors in possession were in adverse possession of tract C continuously for the statutory period of twenty years.

Our attention is called to chapter 42, § 1, Acts 1927, § 3-1314, Burns' 1933, which reads as follows:

"Hereafter in any suit to establish title to lands or real estate no possession thereof shall be deemed adverse to the owner in such manner as to establish title or rights in and to such land or real estate unless such adverse possessor or claimant shall have paid and discharged all taxes and special assessments of every nature falling due on such land or real estate during the period he claims to have possessed the same adversely: Provided, however, That nothing in this act shall relieve any adverse possessor or claimant from proving all the elements of title by adverse possession now required by law."

When the bar of the statute of limitations has run, a grant to the adverse possessor is presumed, and results in extinguishing the title of the true ■ owner as effectively as if there had been a grant. *Moore* v. *Hinkle* (1898), 151 Ind. 343, 50 N. E. 822; *Bowen* v. *Preston* (1874), 48 Ind. 367; *Brown* v. *Anderson* (1883), 90 Ind. 93.

In the instant case the twenty-year statutory period 'of adverse 'possession had been completed before the enactment of the 1927 statute above set forth ■ ' and that statute is therefore not applicable. . The trial court correctly concluded that appellees, George J. Jolley and Thomas S. Jolley are ' the owners of tract C.

Judgment affirmed.

NOTE.—Reported in 41 N. E. (2d) 640.